# CHARLESTON.

LAUCK *et al. v.* LOGAN.

Submitted June 17, 1898—Decided November 23, 1898.

1. DEED—*Will—Construction of Writing—Death of Maker.*
      The rule of construction for determining whether an instrument is a will or testamentary paper or a deed is that, if it passes a present interest, though the right to possession or enjoyment does not accrue till the death of the maker, it is a deed or contract, but, if it does not pass any interest or title whatever till his death, it is a will or testamentary paper, not a valid deed or contract.   Section 5, chapter 71, Code 1891, does not change this rule.   (p. 253).

2. DEED—*Will—Construction of Writing—Intention of Maker.*
      In determining whether an instrument is testamentary or deed or contract, courts do not allow language peculiar to either class of instrument, nor even the belief of the maker as to the character of the instrument, nor the name he gives it, to control inflexibly its construction; but, giving due weight to these circum-

stances, courts look further, and, weighing all the circumstances surrounding the parties and attending the execution of the instrument, give to it such construction as will effectuate the manifest intention of its maker. (p. 253).

3. DEED—*Delivery of Deed—Vested Remainder.*

An instrument in form and name a deed of conveyance, acknowledged as such, and delivered to the grantee, whereby, for consideration of five dollars and love and affection, the grantors "do grant with general warranty" a tract of land closing with the clause, "But it is hereby distinctly understood and stipulated that this deed shall take and be in full force and effect immediately after the said William Logan shall depart this life, and not sooner," is a valid deed, not a testamentary paper, and con - fers a vested remainder on the grantee, to come into enjoyment on William Logan's death. (p. 255).

4. LIVERY OF SEISIN.

Section 1, chapter 116, Code Va. 1849, taking effect 1st of July, 1850, abolished livery of seisin. (p. 260).

Appeal from Circuit Court, Wood County.

Bill by Sarah E. Lauck and Laura L. Downing against L. N. Logan and others. From the decree, Logan appeals.

*Reversed.*

VAN WINKLE & AMBLER and GEORGE W. NEAL, for appellant.

HARRY P. CAMDEN and W. N. MILLER, for appellees.

BRANNON, PRESIDENT: .

William Logan and wife made a deed by which they conveyed to L. N. Logan certain real estate in Parkersburg in consideration of five dollars paid, and love and affection. The granting part of the deed is, "Do grant, with general warranty, the property described," &c. At the close is the clause, "But it is hereby distinctly understood and stipulated that this deed shall take and be in full force and effect immediately after the said William Logan shall depart this life, and not sooner." This writing was signed, acknowledged and delivered to L. N. Logan at its .date. William Logan died, and the deed was put on record a few days after his death. Later, Sarah E. Lauck and Laura L. Downing brought suit in chancery against L. N. Logan to annul said deed, which resulted in a decree annulling it, from which L. N. Logan appeals. All said parties are

children of William Logan. The plaintiffs rested their bill on three grounds, namely, the incompetency of William Logan to make the conveyance, undue influence used to induce him to make it, and invalidity of the conveyance itself. There is no basis under the evidence to sustain the charges of incompetency and undue influence. Indeed, virtually, they were not relied upon in argument. The sole question is the validity of the deed. It is claimed by plaintiffs that it is neither a deed nor a will effectual to convey the property; that it is not a deed valid to pass property, because it conveys no present estate, vests no title in the grantee *in præsenti* (at present), but vests it *in futuro* (in future), and therefore is not a deed passing estate, but is testamentary in character, operating, like a will, to vest estate only at the death of its grantor; and that it is not a will because not shown to have been wholly written by Logan, or executed with witnesses, as required by law to make it a good will. I will remark that it is no objection that a deed vests estate *in futuro*, for that a deed may now do under our statute law; but the objection made against this deed is that it vests title only at the death of William Logan, and is thus not an act of alienation operative between living persons (*inter vivos*). In *Roberts* v. *Coleman*, 37 W. Va., 143, (16 S. E. 482), this Court held that "an instrument transferring property intended to operate only after the death of its maker is testamentary in character, and cannot operate as an instrument *inter vivos.*" Further examination upon the subject made by me in this case, and the able brief of appellees' counsel, confirm me in the opinion that the said statement of law is borne out by the decided weight of authority in many well-considered cases. I may safely say under them that, if a writing passes a present interest, though the right to its possession and enjoyment may not accrue till grantor's death, it is a good deed or contract; but, if it does not pass an interest or right till the death of the maker, it is a will or testamentary paper, and not good as a deed or contract. No matter that the paper is in name or form a deed, a bond, a a note, or an agreement, if it is to pass title only at death, and vest no manner of estate till then, it is not a deed, bond, note or agreement, but a will or testamentary paper;

no matter what its maker called the paper, or believed it to be. What does it say? What is its effect in law? That is the question. The intention of the maker as to the character of the estate conveyed is the criterion by which the court determines whether it is a deed or will, and, if the intention gathered from the whole paper is that no estate is to pass until his death, it is a will, not a deed. It may confer a present vested estate, though the right of possession and enjoyment under it may be in the future, and it is a good deed, but if it vests no estate whatever till death it is a will. 29 Am. & Eng. Enc. Law, 145, 149; *Burlington University* v. *Barrett*, 92 Am. Dec., 376, note, 383; *McBride* v. *McBride*, 26 Grat., 476; *Hazleton* v. *Reed* (Kan. Sup.) 26 Pac., 450; *Turner* v. *Scott*, 51 Pa. St., 126; *Deiz's Case*, 50 N. Y., 88; *Brewer* v. *Baxter*, 5 Am. Rep., 530; *Watkins* v. *Dean*, 31 Am. Dec., 583; *Babb* v. *Harrison*, 70 Am. Dec., 203; *Carey* v. *Dennis*, 13 Md., 1. The eminent Judge Baldwin said in *Pollock* v. *Glassell*, 2 Grat., 457: "The very reason which prevents this assignment from taking effect as a deed requires that it should be treated as a will. A deed is an instrument which must operate *inter vivos*, and here the instrument cannot operate in that way, it having no legal effect till the death of the party by whom it was executed." The theory upon which this doctrine seems to rest is that the paper does just what a will does,—that is, it gives the property at the death of the maker, a thing which the law says can only be done by a will; and therefore, if of any effect, it is as a will, not as a paper operative between living people. The law says that property can be passed by the act of the parties only by deed or will, and when a paper is a will it is not a deed. That is the sole reason for denying its effect as a deed. If it were an open question, I would say that the law ought to give a paper not so executed as to be good as a will effect as a deed, if good as a deed, and a paper executed so as not to be good as a deed effect as a will, if good as a will. If A. grant land to B., reserving a life estate, all agree that the deed is valid, because it instantly passes a vested estate to B. in remainder, only postponing its possession and enjoyment till the death of A. *Hurst* v. *Hurst*, 7. W. Va., 289; *Trawick* v. *Davis*, 85 Ala., 342, (5 South, 83); and

yet if A. "doth grant a certain tract of land to B. at A.'s death," it would be no deed, because passing no title or estate till A's death. How technical the difference! How unsubstantial! In both the grantor means the same thing,— that is, to reserve the possession and enjoyment in himself during life, and then give them over to B.,—and his intent ought to prevail. If a man make a deed, and deliver it to another in escrow, to be delivered to the grantee after the death of the grantor, it is a good deed, though we know that a deed is ineffective without delivery. The courts struggle to make the act execute the intent. *Lang* v. *Smith*, 37 W. Va., 734, (17 S. E. 213); *Davis* v. *Ellis*, 39 W. Va., 230, (19 S. E. 399). But the rule stated above, though seeming to me to be unreasonable, is intrenched behind many decisions through many years, and we cannot repeal it, especially as it is a rule of property, not a mere rule of court practice. But, as it defeats intention, it should be applied only in the plainest cases. Such is the general rule. Its application is often difficult. Each instrument must stand on its own feet, be judged by its language and circumstances. In the first place, in the construction of both deeds and wills we must seek the intent of their makers; and in doing so the whole paper, and all its parts, must be considered together. *Hurst* v. *Hurst*, 7 W. Va., 289, 339, "In determining whether the paper is testament or deed or contract, courts do not allow the use of language peculiar to either class of instruments, nor even the belief of the maker as to the character of the instrument, to control inflexibly the construction; but, giving due weight to these circumstances, courts look further, and, weighing all the language as well as facts and circumstances surrounding the parties attending the execution of the instrument, give it such construction as will effectuate the manifest intention of the maker." *Burlington University* v. *Barrett*, 92 Am. Dec., 376.

Now, let us look into the deed before us. Without the closing clause it is perfectly clear that this deed vests a present fee-simple estate by the words "do grant" in the present tense, importing in grammar, as well as daily language, present, actual transfer. We must give these words, found in the very heart of the deed,—in its grant-

ing clause,—their natural force. The closing clause, however, must not be forgotten. Shall it destroy the plain import of the words "do grant?" Or shall we rather say that it means only to postpone the actual possession and use of the property till William Logan's death? Is not this a construction giving these different parts of the deed due weight? Who shall say, or who can reasonably say, that it does not speak the real purpose of the parties? Did not William Logan intend to vest the property finally and actually, and beyond his recall, in L. N. Logan, only reserving to himself a life estate? The use of the word "full" strengthens this view, implying that the mind realized that the deed had present partial effect; yet it was not intended to have full, complete, final effect until the grantor's death,—that is the property was to be the grantee's, but not to come to his hands, but remain in the grantor's hands, until the grantor's death. The deed does not say, "do grant to L. N. Logan at the death of William Logan," but the granting clause is absolute, and the reservation of what I say was intended to be only the reservation of a life estate is a later and independent clause. We have words of present grant. They are not without force, and are not to be paralyzed by the closing clause, when we can assign to it a reasonable function, and give each clause its fair relative meaning, when laid by the side of the other clause. These words were considered potential in *Wall* v. *Wall*, 64 Am. Dec., 151. Do you think that William Logan intended that this paper should be ambulatory, vesting no right in his son, but subject to his own revocation? He inserted no clause of revocability. He does not hint of such a purpose, and he grants with general warranty. That does not comport with the idea of a power of revocation in him. People do not put warranty in wills. They do so in deeds of present grant. The deed was executed by both husband and wife. Such is not the case with wills. The paper does not dispose of all Logan's property, for by an exactly similar deed he conveyed on the same day to a daughter, Mrs. Broughton, other valuable property. If he intended to do a testamentary act, why did he not make one will cover both properties? The answer is that he intended by these deeds, as

deeds, to give finally to these children the properties irrevocably, reserving to himself a life estate. He had a lawyer to draw the papers. Why did he not draw a will, if he intended a will? He was instructed to draw deeds, and not a will. And then, again, William Logan did not keep this paper in his own possession, as men do with wills because they have no operation until death; but he delivered them on their very date, because he intended them to operate at once, as men do with deeds; he intended to give his son and daughter muniment and evidence of irrevocable title. He acknowledged the deed before a notary for recordation. Men do not so acknowledge wills. William Logan did each and everything which he could do, or was required by law to do, to make the deed effectual as a deed; and when that deed contains language and form and cast operating as and for a deed, and not a will, why shall we not accord it force as a deed? There is one thing that is very certain, and that is that this construction carries out the true intent of William Logan, and enables a man competent to do the act, and free from undue influence, to do what he pleases with his property, or some of it. Why he chose to give it to these two children we do not know; but, as he was competent, this Court cannot inquire into the reasonableness or justice of his act. *Hale* v. *Cole*, 31 W. Va., 576 (8 S. E. 516). We hold the deed valid.

Reference was made to our decision in *Ward* v. *Ward*, 43 W. Va., 1, (26 S. E. 542), as ignoring the rule that a paper vesting estate at death is not a deed, but testamentary. By no means does it do so. The point was not raised or considered. The deed was conceded to be a valid deed. The point could not arise, because the deed reserved plainly a life estate to grantor, and conferred a remainder on grantee, which all authorities hold good.

I know that some of the cases cited above for the rule stated would overthrow this deed, but others would not. *Wilson* v. *Carrico*, 40 Ind., 533, held a deed saying, "to be of no effect until after death of grantors, and then to be in force," valid as a deed, not testamentary. Deed in *Shackleton* v. *Sebrce*, 86 Ill., 616, read "This deed not to take effect until after my decease,—not to be recorded till after my decease." Held a valid deed. So held in

*Owen* v. *Williams*, 114 Ind., 179, (15 N. E. 678), of a deed granting "after my death and not before." Deed conveyed "premises to have and hold to him at said grantor's and grantor's wife's death." Held valid deed, not a will. *Goff* v. *Davenport* 96 Ga., 423, (23 S. E. 395). So, in *Wyman* v. *Brown*, 50 Me., 139, a deed "not to take effect during my lifetime, and to take effect and be in force from and after my death." Likewise, *Abbott* v. *Holway*, 72 Me., 298, a deed "not to take effect and operate as a conveyance till my decease." So a deed, "at my death to have and hold." *Chancellor* v. *Windham*, 1 Rich. Law, 161. So, *Jenkins* v. *Adcock*, (Tex. Civ. App.) 27 S.. W. 21; *Carpenter* v. *Hannig*, (Tex. Civ. App.) 34 S. W., 774. Since reaching this point in this opinion, I conclude there are as many, if not more, cases pointedly sustaining as those pointedly overthrowing this deed. So, reputable cases vindicate our holding, and in the conflict of authority why should we not make this instrument carry out its maker's intent, rather than make it perish? How should we decide if in doubt?

Counsel argue that, even if this deed were void tested by common-law principles, yet certain statutory provisions so change the common law as to make it valid. They refer to Code 1891, c. 71, s. 5, saying, "Any estate may be made to commence *in futuro* by deed in like manner as by will, and any estate which would be good as an executory devise or bequest shall be good, if created by deed." I cannot see that this operates to repeal the rule above stated that a paper which confers no estate till the death of its maker is inoperative, unless good as a will. After the Norman conquest, land could not be transferred at all by acts of the parties. Then came a statute allowing its transfer by feoffment with livery of seisin,—that is, actual delivery of possession. As the right of transfer existed only under statute, there could be none except by feoffment. Delivery of possession being necessary to manifest the transfer, there could be none where an estate to begin *in futuro* was to be created, and hence no estate in land to begin in future could be created. Another reason was that a freehold could not be in abeyance. The fiction was gotten up that where a particular estate, one for

years or life, with a remainder in fee thereafter, was created, this particular estate would support the remainder, and delivery of possession to the tenant of that immediate estate would answer for the remainder. Hence the rule that a future estate must have a particular estate to rest upon. This continued the law in Virginia till chapter 99, section 28, Code 1819, as to feoffments. But when the statute allowing a man to make a will of lands was passed, a future estate could, by will, be created without a particular estate, and without livery. So, also, under the statute of uses, by those particular conveyances good under it, a future estate could be made without livery. Code 1819, c. 99, section 29. But the common-law feoffment must be accompanied by livery. Even after the act of 1785, saying that no estate of more than five years should be declared except by deed, livery continued necessary, as it simply required that conveyance "be declared," not made by deed. The act, too, provided that livery of seisin, where that was required, should be in writing and recorded, showing that where the old law required livery it must still be made. It was required in common-law conveyance, feoffment, but not in devises or instruments good under the statute of uses. But our Code of 1819 partially abolished livery of seisin in saying an estate might be made to commence *in futuro* as well by deed as by will. It abolished livery as to future estates, not present ones. So I think a mere grant, which before this act, was only proper to grant estate in incorporeal property, became effectual to convey the land itself, and without livery. Grants always were required to be by deed, which passed title; feoffments were by word and livery only until the statute requiring them to be declared by deed. This deed did not vest title, but only attested what the livery did. That passed title. Tied. Real Prop., § 771. Now, the only purpose of this act was to get rid of livery of seisin, which prevented creation of future estates. It was not intended to abolish wills, nor the necessity of a will for an act of transfer requiring a will, that is a vesting of an estate upon the death of its creator. The objection to a "will deed" is, not that it creates a future estate, but that it gives estate at death, which requires a will. If

this statute so operated, there would scarcely be use for wills, and any instrument passing estate only at death would be valid, and all the decisions holding "deed wills" —that is, deeds vesting estate at death of grantor—void would be no longer in force. It has not been so construed. Certainly not in Virginia.

I may remark, though not important in the case, that livery of seisin was abolished by Code 1819, c. 99, s. 28, only partly,—that is, as to freehold estates commencing *in futuro;* or, rather, we cannot say abolished, as livery was never applied to future estates, but prevented their creation; and therefore it is more accurate to simply say that that act allowed, for the first time, the creation by deed of estates to begin *in futuro.* It left standing livery of seisin where it had always stood, necessary in the creation of freeholds commencing at once. This appears from the fact that the same act which allows in section 28 the creation of a future estate, still continues in section 3 livery of seisin where it had been always required in immediate estates. And even the statute cited as wiping out livery (Code 1849, c. 116, s. 4), going into force July 1, 1850, did not abolish it, and only rendered it needless, because it says, "All real estate shall, as regards the conveyance of the immediate freehold thereof, be deemed to lie in grant as well as in livery," contemplating both as still operative. It does not say "lie in grant" only, or "in grant and not in livery." And this confirms my view that the Code of 1819, in allowing future estates, left livery standing as to creation of immediate estates, because the section quoted from the Code of 1849 says, "as regards the conveyance of the immediate freehold," thus limiting it to conveyance of the immediate freehold, and showing that the legislature considered livery as yet applicable to them, and designed to dispense with the necessity of its presence as to them. But, while that section did not abolish livery, and only allowed a grant for the immediate corporeal freehold, and thus enlarged the common-law effect of a grant before used only for incorporeal property, I think that section 1, chapter 116, Code 1849, saying that no greater estate than five years should be conveyed except by deed or will, did abolish livery. Thus, a grant of land without livery,

prior to July 1, 1850, would not be good (unless under statute of uses); but it would be good after that date. Before that date it must be "declared" by deed, or it would not be good, even with livery; but if it were so declared by deed, livery was till then essential. Since then livery without deed is not good. I think, however, that such grant before July 1, 1850, based on good consideration, would have been good under the statute of uses as a covenant to stand seised to use, without livery, and a grant for valuable consideration good as a bargain and sale, under that statute. But a voluntary conveyance without livery would not have been good. Thus livery of seisin is unavailing since that date; and a deed of grant itself, without livery, passes the freehold, as Code 1849, s. 1, in saying no greater estate than five years shall be passed but by deed or will, impliedly says it may be passed by deed or will; and section 4 says, "All real estate as regards the immediate freehold shall lie in grant as well as in livery;" and section 5 says, "Any interest in or claim to real estate may be disposed of by deed or will;" and chapter 117, section 2, says that the form of grant of land given by that chapter shall convey all the grantor's "estate, right, title, and interest." The West Virginia Code contains those provisions in chapter 71, sections 1, 4, 5, and chapter 72, section 2. The provision in Code, chapter 71, section 5, that "any estate which would be good as an executory devise or bequest shall be good if created by deed," only intends to enable what is in quality an executory devise to be made by deed, giving the same force to a deed to create executory interests as a will. By the use of the word "and" after the clause enabling an estate *in futuro* to be created by deed, this clause as to executory devise may be only to make more clear the capacity of a deed to create a future estate,—place it beyond question by mere expansion of language,—but its office seems to be to do by deed what could before only be done by will. Certainly, we cannot say it abolishes the rule that a deed passing no shadow of title to land till the grantor's death shall be repealed. Briefs of able counsel and oral argument have introduced these statute provisions into this case, and I would be wanting in deference if I had not discussed

the subject, though I must, with entire respect to counsel, say that I do not see that they are relevant. Decree reversed, and bill dismissed.

*Reversed.*