## CHARLESTON.

AUSTIN DOWNS *v.* EFFA L. DOWNS *et al.*

Submitted September 20, 1921.  Decided October 4, 1921.

1. DEEDS—*Not Effectual to Vest Title Until Delivered.*

    An instrument purporting to be a deed for land, though duly signed and acknowledged by the grantor and by him caused to be recorded is not effectual to vest title in the grantee unless and until it is delivered to him by the grantor.  (p. 160).

2. SAME—*Actual or Constructive Delivery will Vest Title.*

    The delivery may be actual or constructive, and if either, the title in the land conveyed will vest in the grantee.  (p. 160).

3. SAME—*Facts Concerning Execution and Record. Particularly Grantor's Admissions, May Warrant Presumption of Intended Delivery.*

    The facts directly or collaterally connected with the signing, acknowledgment and recordation of an instrument purporting to be a deed for land may in some circumstances warrant the presumption of an intent on the part of the grantor to deliver the deed; especially so when they are re-enforced by the admission of the grantor of the grantee's rights under the conveyance.  (p. 160).

4. Same—*Facts Sufficient to Warrant Presumption of Delivery Stated.*

Among such circumstances are the execution of a deed by the grantor to his son, including its acknowledgment and delivery for record, its retention by the recording officer for a long. period of years, the grantee having died in the meantime, the grantor's avowed purpose being to induce the son to abandon employment elsewhere and return to the land, improve and cultivate it for the common benefit of both parties thereto, and the response of the son to the inducement, his return to and improvement and cultivation of the land, the erection by both of a residence on the land and its occupancy by the grantee for many years, in this instance fifteen, though not consecutive, with the apparent knowledge and acquiescence of the father, recordation of the deed and his expressed recognition of the grantee's rights under the conveyance. (p. 160).

5. Same—*Facts Held to Indicate Grantor's Intention to Deliver and Grantee's Intention to Accept Conveyance.*

The acts of a grantor, a father, in the execution and recordation of a deed, purporting to vest in the grantee, his son, without his knowledge, title to an undivided moiety of land for the avowed purpose of inducing the grantee, then employed elsewhere, to return to the land, improve and cultivate it, and the acts of the grantee in reliance upon such inducement, considered together, disclose an intention on the part of the grantor to deliver, and upon the part of the grantee to accept the conveyance. (p. 161).

6. Same—*Presumption of Constructive Delivery is Not Conclusive.*

The presumption of constructive delivery of such instrument is not conclusive, but may be rebutted by evidence showing either non-delivery by the grantor or non-acceptance by the grantee. (p. 162).

7. Same—*Grantor Must Rebut Presumption of Delivery.*

To rebut such presumption, and it may be rebutted, the burden rests upon the grantor; but to have that effect the proof must be certain, competent and demonstrative. (p. 162).

8. Witnesses—*Grantor May Not Testify to Deceased Grantee's Repudiation of Conveyance.*

The grantor is not competent, according to sec. 23, ch. 130 Code, to prove repudiation of the conveyance by the grantee, he being dead when the testimony is given. (p. 162).

Appeal from Circuit Court, Doddridge County.

Action by Austin Downs against Effa L. Downs and others. From a decree cancelling deed as a cloud on plaintiff's title, the defendants appeal.

*Reversed; Bill dismissed.*

*J. O. Wilcox* and *John J. Ingle,* for appellants.

*J. V. Blair,* for appellee.

LYNCH, JUDGE:

The decree reviewed upon this appeal cancelled a deed as a cloud upon plaintiff's title to an undivided moiety of a tract of 100 acres of land owned by plaintiff in Doddridge County, on which he has resided since he acquired it by purchase in 1877. The grantee, John S. Downs, is his son, and the defendants are the son's widow and heirs at law, he having died intestate before the institution of this suit.

The deed bears the date of September 27, 1893, as do also the certificate of acknowledgment and the memorandum of the clerk admitting it to record in the proper office of Doddridge County. If it lacked anything essential to complete the conveyance it was the failure to deliver it then or afterward, directly or constructively, to the grantee. Whether it was or was not delivered in either manner is, as we apprehend, the chief question to be solved upon this investigation; and its proper solution depends upon the following facts and circumstances:

As appears from the face of the deed, the consideration for the conveyance was four hundred dollars, one half of it cash, the receipt of which is therein acknowledged, and two notes in equal amounts, payable in six and twelve months with interest were given for the residue and payment secured by a lien retained in the deed. The grantee was not present at any time during the execution of the deed and its delivery to the clerk for recordation on the same day. As at that time he was, and theretofore had been in Marion County, he could not then have paid the two hundred dollars receipted for or executed the notes described in the deed. It seems clear, at least the plausible inference is, that he had no knowledge or

information of his father's intention to convey him an interest in the land until sometime after the execution and recordation of the deed, the interval being of brief duration. So that if the son did pay any part of the consideration in cash and execute notes for the residue he did neither on the date of the deed, but may have done so either before or afterwards. The plaintiff and J. V. Blair, who as an attorney at law prepared it and the notes and as a notary public certified the acknowledgment, were the only persons present at the time of the execution of the instrument, and they and the clerk when it was delivered to the latter for recordation.

The deed remained in the office of the clerk of the county court of Doddridge County from the time it was delivered to him until its redelivery, May 8, 1919, to the plaintiff accompanied by Blair as his counsel; and the notes in the possession of the plaintiff from the date of their preparation until they were exhibited with the bill without alteration or change in form or appearance and with no signature thereto affixed. Plaintiff and Blair identified them as the notes he had prepared for the grantee's signature.

The bill charges and plaintiff testifies that his son, the grantee, when informed of the action taken, repudiated it, refused to pay the consideration for the conveyance, or any part of it, and to obligate himself to comply with any of the terms thereby imposed, and ever thereafter continued so to refuse. These allegations as to the repudiation of the transaction, and refusal to comply with the terms proferred, the adult defendants in their answers deny and during the taking of the depositions questioned by objections the competency of the plaintiff to relate the details of any conversation had between him and the grantee, who had died prior to the date of the father's examination as a witness in his own behalf. According to the recitals of the decree the cause came on to be heard upon these objections as also upon the matters therein specified, yet the decree is silent as to any ruling thereon. In such a case the legal inference is that the court deemed the objections unfounded and so treated them. But the evidence objected to clearly comes within the express inhibition of section 23 of chapter 130 Code, and not within its exception;

and as defendants still rely on the challenge for incompetency in this and other like instances, such testimony is disregarded upon this inquiry.

The purpose of the conveyance, as plaintiff himself has informed us, was to induce his son to abandon employment elsewhere and to reside upon the farm and assist in its management, control and cultivation for the joint benefit of himself and the father's family. This design he conceived apparently without previous consultation with the son, and, as the context shows, in the absence of the latter. So far as disclosed, the son was not aware of the father's intention or purpose until after the execution of the deed.

There is some diversity of opinion as to the age of John S. Downs when the deed was made. He married the defendant, Effa L. Downs, August 17, 1894, less than a year after the date of the deed, and in the license his age is given as 23. But so far as it affects the merits of the controversy it matters not how old he was when the deed was executed. Soon after the marriage, however, he and his wife moved into the residence of his father, and he and they continued to occupy it jointly, just how long does not appear, but probably until the grantee with the aid and assistance of the father erected on the land a residence for the son, into which he moved and which he occupied for a period of about five consecutive years when he moved to Wetzel County, and later again to the residence so erected by him and his father where he remained for several years, the combined periods of his occupancy being about fifteen years. The record does not furnish accurate data as to the changes of residence to and from the land and none as to the cause therefor, or whether the father acquiesced in the son's absence during each interim. There is some testimony tending to show friction between them at the time the son finally left the premises, a few years before his death.

If the reason for the conveyance was to induce the son to occupy the land, and he did occupy, cultivate, improve and keep it in a state of repair, as the testimony of competent disinterested witnesses shows the fact to be, he did what plaintiff contemplated when he executed the deed. The oc-

cupancy was not that of a tenant paying rent, it was not merely permissive or by sufferance, as we may presume in the absence of evidence to the contrary.

The execution of the deed by the father and the entry of the son into possession of the land virtually were contemporaneous acts. Both participated in the fruits of the common enterprise, the cultivation of the land. They jointly erected the residence occupied by the son. To the possession and utilization of the land by the son the father did not object, but concurred for fifteen years or more. His acquiescence is significant and tends to show his intention to convey, and the son's intention to accept the conveyance. Acceptance is as essential to the validity of a deed as delivery. *Campbell* v. *Fox,* 68 W. Va. 484, 69 S. E. 1007. Delivery of a deed implies its acceptance by the grantee except in the case of fraud, artifice or imposition. 18 C. J. 212, 213, cases cited in note 64. If the deed is in due form and the grantor has signed and acknowledged it for record its manual delivery is not essential to an acceptance by the grantee, as a constructive delivery is sufficient.

Whatever suffices to raise a fair and reasonable presumption of an acceptance implies delivery. 18 C. J. 416. In other words, they are so related that each necessarily implies the other, when the circumstances are such as to warrant the implication and there is absent any act or conduct of the parties involving in doubt and uncertainty their intention as to either of these essential requirements. What they have said and done is to be weighed and considered in order to ascertain their intention and purpose regarding the title which the deed purports to vest in the grantee. The grantor deliberately and voluntarily caused the deed to be prepared, his acknowledgment certified and the instrument recorded nearly twenty-six years before plaintiff sued for its cancellation. Professedly, his purpose was to induce exactly what ensued, his son's return to the place of his birth and adolescence, the cultivation, repair and improvement of the homestead. This purpose he accomplished, and the son by entering upon, and remaining on the land during many years, though not con-

tinuously, with the knowledge and acquiescence of the father, indicated an intention on his part to accept the benefit of the conveyance. Such an entry by the grantee ''into possession of the land is a circumstance tending to show a delivery of the deed and in connection with other circumstances may be strong evidence of delivery.'' 2 Jones, Law of Real Property, secs. 1220, 1227. Recordation of the deed by the procurement of the father and its prolonged lodgement in the office of the recording officer without being recalled by the grantor until after the death of the grantee, including possession, improvement and the joint enjoyment of the beneficial results are such additional circumstances as bring the case within the rule stated by the author. *Hammell* v. *Hammell,* 19 Ohio State 17; *Kearny* v. *Jeffries,* 48 Miss. 343, 359.

Although necessary to the effectiveness of a deed, acceptance need not be express, it may be implied if the facts connected with the transaction and the acts done apparently in accord with the intention of the parties to the conveyance are sufficient to warrant the implication. *Guggenheimer* v. *Lockridge,* 39 W. Va. 457, 461. In *Williams* v. *Williams,* 148 Ill. 426, 36 N. E. 104, decided a few months earlier than the case last cited, and on the facts somewhat like these now before us, the Illinois Court said: ''If a grantor, with or without any previous arrangement with the grantee, executes a deed, and has it recorded, and notifies the grantee, who by words or acts accepts the conveyance, the delivery is sufficient, as the actual possession of the instrument is not indispensable.'' The Court also considered as significant the entry of the grantee upon the land, clearing it, repairing fences, setting out fruit trees, and the exercise by him of other like acts indicative of ownership. The facts in the Williams case and in *Kingsbury* v. *Burnside,* 58 Ill. 310, decided by the same court, were similar, the opinion in the former citing and being predicated upon the latter.

Besides, the acknowledgment of a deed is in itself some manifestation of an intention to deliver it. *Ferguson* v. *Bond,* 39 W. Va. 561, 566, 20 S. E. 591; and its recordation tends strongly to indicate a purpose on the part of the grantor to deliver it, and when the grantee enters on the land convey-

ed the presumption is still stronger. *Com.* v. *Selden,* 5 Munf. 160.    Moreover, John S. Downs could as a matter of right have obtained possession of the deed while it remained in the clerk's office had he deemed its possession necessary to perfect his title or protect his ownership; for "after being so recorded, such writing may be delivered to the party entitled to claim under the same." Sec. 7, ch. 73, Code.

Recordation is the equivalent of a notice of an intention on the part of the grantor to part with his title and vest it in another and thereby publicly warn prospective purchasers and his creditors, if any he has, that he has divested himself of the title and thereby of his land.

The presumption of a constructive delivery of a deed is not conclusive but may be rebutted by evidence showing either non-delivery by the grantor or non-acceptance by the grantee. To escape the operative effect of the conveyance manually or constructively delivered or actually or constructively accepted the burden rests upon the grantor or those who claim under him or whose rights are jeopardized by the conveyance to prove the fact to be as he or they allege. In order to entitle such person to the relief he seeks, the proof must be certain or reasonably conclusive. *Chambers* v. *Chambers,* 227 Mo. 262, 127 S. W. 86. But the most potent and corroborative fact upon the question of delivery and acceptance is the admission of the plaintiff himself, as established by the uncontradicted testimony of Thaddeus L. Curry, to the effect that plaintiff had conveyed an interest in the land to his son John.

In his bill and in the proof introduced by him, plaintiff undertook to show non-compliance by the son with the terms of the deed when the depositions were taken, and as the testimony related to conversations between them the inhibition of section 23, chapter 130, Code, applies. What Mrs. Austin Downs said, though frank, proves nothing helpful to the plaintiff, and consisted only in an assurance on the part of the son that the land would not be sold while she lived. To that extent she recognized the son's right to sell the land, a right as to the exercise of which she seems to have been solicitous. So that if she was competent to testify because she did not join plaintiff in the execution of the deed, her testi-

mony does not affect the rights of the defendants. The latter invoked the aid of the statute cited by objections, and by submitting the question of competency to the determination of the court as appears from the decree. But the court either advisedly or inadvertantly disregarded the challenge. However, defendants still persist in having that question determined upon this appeal. It is too plain to need the citation of authority, as the statute furnishes its own interpretation.

The only other proof that tends to disclose an intention on the part of the grantee to repudiate the deed and a purpose to reinvest the title in plaintiff was to the effect that he refused to accept half of the rental accruing on an oil and gas lease executed by the father alone on the land, the amount so due having been deposited in a Salem Bank. The substance of this testimony was that the father urged upon the son the necessity of going to the bank to obtain the money, as it was deposited to their joint credit and neither could withdraw it without the consent of the other. The son went as requested but refused to accept any part of the money as a matter of right, but finally consented to do so as a gift upon the insistence of the father. This testimony corroborated by competent witnesses is like a two edged sword in that it cuts both ways, as will readily appear. The fact most relied on, however, is that the son told the father ''to bring the papers up and he would sign them; and what was down there was his and and he wouldn't bother him any more.'' None of the witnesses so testifying it seems, knew to what papers they referred or what they had in mind by the allusion ''down there'' unless they meant the land. These statements do not deserve much if any consideration viewed in the light of the condition obtaining when the conversation occurred, as it did on the way home.

It is only necessary to refer to two other grounds urged upon our attention. One is the assessment of the land for taxation and the payment of taxes so assessed, the other the refusal of John S. Downs to sign a paper having for its purpose a ratification of the oil and gas lease just mentioned. Plaintiff always paid the taxes charged against the land, al-

though part of the time after the deed was made the assessment was in the joint names of both parties to the deed. How this fact affects the right of either is not apparent. It is a mere circumstance, which, without explanation or connection with the issue raised by the pleadings and proof amounts to nothing, the only charge being that plaintiff paid the taxes and fraudulently caused the assessment to be changed from their joint names to his own, and this allegation no proof supports. John S. Downs did perhaps refuse to ratify the lease, and it soon afterwards lapsed, for what reason does not appear. He may have thought its execution unwise or an unnecessary and unprofitable encumbrance upon the land.

Whether he paid or did not pay for the moiety conveyed to him no competent testimony tends in any degree to show, except that if he complied with the deed he did so either before or after its recordation. That he did so before is not probable, though he may have done so afterwards, or he and his father may have made some other or different arrangements as to payment. Defendants allege, but offer no evidence to show, an indebtedness due from the father to him in excess of the consideration stipulated in the deed. Plaintiff was not competent as a witness to prove non-payment as that would be in derogation of the statute cited, so that the only proof of the non-payment of the consideration is the failure to make the cash payment and execute the notes at the time the deed was made and recorded. What may have occurred afterwards the record does not disclose. That plaintiff remained silent so many years and took no steps toward the cancellation of the deed until after the grantee had died and no longer able to protect himself and family certainly is a circumstance replete with significance. It is without explanation except by the mere assertion that defendants had set up a claim to a half interest in the land after the grantee's death. The grantee had persisted in his right to such an interest while he lived and that right the father never controverted, so fas as we are advised.

Besides, if plaintiff has not received the consideration specified in the deed, and not lost his right to enforce payment thereof, he may still be entitled to it. But that relief

he has not asked, and his right thereto we do not adjudge. Nor is weight to be given to the failure to proceed against the interest of the decedent in the one hundred acres to satisfy his debts and liabilities in the suit brought for that purpose, because that fact in itself is not sufficiently important to warrant cancellation of the deed.

Our conclusion, therefore, is to reverse the decree and dismiss the bill.

*Reversed; Bill dismissed.*