550 S.E.2d 605

**Ernestine WALLS, Plaintiff Below, Appellee,**

v.

**David L. CLICK, Anne C. Click and the Lewis R. Click Estate, Defendants Below, Appellants.**

**No. 28721.**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 2001.

Decided June 8, 2001.

PER CURIAM:

This is an appeal by Mr. David Click, Mrs. Anne Click, and the Estate of Mr. Lewis Click (hereinafter "Appellants") from an order of the Circuit Court of Cabell County denying their motion for judgment as a matter of law or a new trial subsequent to a jury finding that a 1993 deed conveying various parcels of real estate to David and Anne Click was null and void. The jury's finding effectively conferred the properties in question to the Appellee, Ms. Ernestine Walls.[1] The Appellants appeal to this Court, contending that the lower court erred in failing to grant judgment as a matter of law or, in the alternative, a new trial. We agree with the contention of the Appellants that the lower court should have granted judgment as a matter of law and reverse the decision of the lower court.

### I. Facts and Procedural History

From 1976 through 1982, Lewis Click, the husband of Appellant Anne Click and the father of Appellant David Click, acquired five parcels of land in Cabell County, jointly owned with Ernestine Walls with a right of survivorship. Included in these properties was an apartment[2] occupied since 1985 by Lewis Click and his disabled wife, Appellant Anne Click, age 72. According to the Appellants, Lewis Click cared for Mrs. Click "as if she were a child, including her physical, emotional and financial needs."[3]

J. William St. Clair, St. Clair & Levine, Huntington, West Virginia, Attorney for the Appellees.

Margaret L. Workman, Charleston, West Virginia, Attorney for the Appellants.

In April 1993, Lewis Click engaged the services of Huntington attorney Seaton Taylor to prepare a deed with respect to three of the jointly held properties, conveying his undivided one-half interest in three of the five properties to his wife and son.[4]

1. Ernestine Walls and Lewis Click were friends, business associates, and licensed realtors. Although they never entered into a formal, written partnership agreement, they filed partnership tax returns and conducted business as ELF Partnership.

2. The apartment building, Hamill Apartments, is located on the corner of Eighth Street and Tenth Avenue in Huntington, West Virginia. Mrs. Click continues to reside in that apartment. Since the lower court's denial of the post-trial motions, a condition of the court entering a stay pending appeal was that Mrs. Click pay $500.00 monthly rent into an escrow account. That amount has been paid monthly by Mrs. Click since May 2000. The Appellee also resides in the Hamill Apartment building.

3. According to the Appellants, Mrs. Click began suffering from schizophrenia in the early 1960's and never fully recovered. She remains disabled, despite medications which improved her condition to some extent.

4. This Court recognized the legitimacy of a conveyance by a joint tenant with right of survivorship in *Herring v. Carroll*, 171 W.Va. 516, 300

Lewis Click executed the deed at Mr. Taylor's office on April 21, 1993, and acknowledged the deed before a notary public on that day. Mr. Click took possession of the deed as he left Mr. Taylor's office. It was stipulated at trial that the execution and acknowledgement complied with West Virginia law.

David Click testified that his father, Lewis Click, telephoned him and directed him to open a safe deposit box, accessible only by David and Anne Click. David Click further testified that Lewis Click thereafter delivered the deed to David, instructed David to place the deed in the safe deposit box, and further instructed David not to record the deed until Lewis' death. According to David Click's testimony, Lewis Click also told his son that Ms. Walls understood that the properties were to be conveyed to Lewis Click's family, but "just to be sure, I'm going to give you this——I'm going to give you the properties now." David Click also testified that his father told him and his mother that "he would take care of the properties, for [them]" until his death. David Click testified that he placed the deed in the safe deposit box, accessible only by Anne or David Click and that the deed remained in the safe deposit box until after Lewis Click died on April 14, 1998.

David and Anne Click recorded the deed on April 28, 1998, fourteen days after Lewis Click's death. On June 19, 1998, Ms. Walls filed a complaint against the Appellants, al-

leging that by reason of the death of Lewis Click and the survivorship provisions of their joint titles, she became the sole owner of the three parcels in question. In her complaint, Ms. Walls requested that the lower court declare the deed null and void.

Trial was conducted on December 8, 1999, and the jury concluded that there was no effective delivery of the deed from Lewis Click to Anne and David Click. On January 14, 2000, the lower court entered an order in favor of Ms. Walls, holding as follows. "Based upon the jury's verdict, the Court determines that the deed dated April 21, 1993, between Lewis R. Click, grantor, and Anne C. Click and David L. Click, grantees, is void and ineffective to transfer and convey the real property described therein." On January 24, 2000, the Appellants filed a motion for judgment as a matter of law or, in the alternative, a a new trial. The lower court denied that motion, without stated reason, on May 16, 2000. The Appellants thereafter appealed to this Court.

## II. Standard of Review

■ The Appellants filed a motion for judgment as a matter of law or, in the alternative, a new trial.[5] In syllabus point two of *Alkire v. First National Bank of Parsons,* 197 W.Va. 122, 475 S.E.2d 122 (1996), this Court explained the standard of review for a judgment notwithstanding the verdict[6] as follows:

S.E.2d 629 (1983), and clearly established the ability of a joint tenant to convey his undivided interest to a third party, thereby destroying the right of survivorship. This Court stated as follows in syllabus point four:

A joint tenant may convey his undivided interest in real property to a third person. When one of two joint tenants conveys his undivided interest to a third person the right of survivorship is destroyed. Such third party and the remaining joint tenant hold the property as tenants in common.

5. We addressed the standard of review for a denial of a motion for a new trial in *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995), and explained as follows:

We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review

the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Id.* at 104, 459 S.E.2d at 381. Because we base our opinion upon the conclusion that the lower court erred in failing to enter judgment as a matter of law, we utilize the standard of review applicable to such denial rather than the denial of the motion for a new trial.

6. Amendments to Rule 50 of the Federal Rules of Civil Procedure abandoned the terms "directed verdict" and "judgment n.o.v.," which were commonly associated with the former rule, in favor of the phrase "judgment as a matter of law." In West Virginia, the designation of a Rule 50 motion as a "motion for judgment notwithstanding the verdict" also changed to a "judgment as a matter of law" in the amendment to Rule 50 effective April 6, 1998. *See Miller v. Triplett,* 203 W.Va. 351, 356, 507 S.E.2d 714, 719 n. 8 (1998). In *Barefoot,* we specified that "[t]he

In reviewing a trial court's granting of a motion for judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on the granting of a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally sufficient to sustain the verdict, it is the obligation of the appellate court to reverse the circuit court and to order judgment for the appellant.

This Court also addressed this issue in *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995), as follows:

> Thus, a circuit court's denial of a motion under Rule 50 of the Rules of Civil Procedure will be reversed only if the facts and inferences point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not reach a verdict against the movant.
>
> . . . .
>
> In other words, we will reverse the circuit court's ruling denying such a motion if, after scrutinizing the proof and inferences derivable therefrom in the light most hospitable to the plaintiff, we determine that a reasonable factfinder could have reached but one conclusion[.]

*Id.* at 482, 457 S.E.2d at 159.

■ The appropriate standard for reviewing a jury verdict was enunciated in syllabus point three of *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963), as follows:

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which

the jury might properly find under the evidence, must be assumed as true.

In syllabus point five of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), this Court held:

> [i]n determining whether there is sufficient evidence to support a jury verdict, the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in.favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

## III. Discussion

The Appellants contend that the evidence was insufficient to support the jury's verdict that there was no effective delivery of the 1993 deed from Mr. Click to Anne and David and that the lower court erred in refusing to enter judgment as a matter of law in favor of the Appellants or, in the alternative, grant a new trial. To adequately evaluate the Appellants' contentions, this Court must consider the legal requirements for effective delivery of a deed, the impact of the Appellants' presentation of prima facie evidence of delivery, and the legal ramifications of a conditional delivery of a deed.

### A. Elements of Effective Delivery

■ Established precedent dictates that a deed takes effect from its actual or constructive delivery. *Jones v. Wolfe*, 203 W.Va. 613, 509 S.E.2d 894 (1998); *Parrish v. Pancake*, 158 W.Va. 842, 215 S.E.2d 659 (1975). In *Jones*, this court explained that "[r]ecording of the deed is not critical and acknowledgment is not essential to its validity." 203 W.Va. at 615, 509 S.E.2d at 896. In syllabus point three of *Bennett v. Neff*, 130 W.Va. 121, 42 S.E.2d 793 (1947), this Court explained that "[d]elivery of a deed by the grantor with intent that it take effect as his deed and its acceptance, either express or implied, by the

amendment did not, however, affect either the standard by which a trial court reviews motions under the rule or the standard by which an

appellate court reviews a trial court's ruling." 193 W.Va. at 482, 457 S.E.2d at 159 n. 7.

grantee are essential to its validity." In *Garrett v. Goff,* 61 W.Va. 221, 56 S.E. 351 (1907), this Court reiterated its earlier holding that "[t]o constitute a delivery of a deed, the grantor must by act or word, or both, part with all right of possession and dominion over the instrument with the intent that it shall take effect as his deed." *Id.* at 230, 56 S.E. at 355 *quoting Gaines v. Keener,* 48 W.Va. 56, 35 S.E. 856 (1900).

■ Thus, effective delivery of a deed must include (1) transfer of possession of a valid deed satisfying all required formalities, and (2) intent of the grantor to divest himself of title.

As this Court recognized in *Evans v. Bottomlee,* 150 W.Va. 609, 148 S.E.2d 712 (1966), "[n]o particular form of delivery is required." *Id.* at 623, 148 S.E.2d at 721. "A deed may be manually given by the grantor to the grantee, yet this is not necessary. The real test of delivery is, did the grantor, by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered." *Id.*

B. Prima Facie Evidence of Delivery

■ In *Heck v. Morgan,* 88 W.Va. 102, 106 S.E. 413 (1921), this Court examined the issue of a conveyance of realty and explained that "[p]ossession of an instrument of this character by the grantee is prima facie evidence that it was delivered to him with the intention that it should convey the grantor's title. . . ." *Id.* at 112–13, 106 S.E. at 417. This presumption based on possession was reiterated in syllabus point two of *Evans,* as follows: "Possession of a deed executed and acknowledged with all formalities is prima facie evidence of delivery." 150 W.Va. at 609, 148 S.E.2d at 713.

■ Consequently, upon the Appellants' proper presentation of evidence that they obtained and retained possession of the instrument in the safe deposit box from the time of delivery until after the death of Lewis Click, the Appellants established a prima facie case of effective delivery.

C. Invalidity of Conditional Delivery; Delivery Immediately Passes Title

■ The Appellants maintain that even if the delivery could be regarded as "condition-al" since Lewis Click asked that the deed not be recorded until his death, such condition of delivery is ineffective, resulting in the immediate effective delivery of the deed. This concept was examined in *Dorr v. Middleburg,* 65 W.Va. 778, 65 S.E. 97 (1909), and this Court explained as follows:

> [I]n the case of a deed for land, absolute and complete on its face, if it be made, executed, and delivered by the grantor to the grantee, to take effect upon any condition, the condition is void and the deed becomes absolute, and the title passes immediately on the delivery thereof, and the condition cannot be shown by parol evidence so as to defeat the deed.

*Id.* at 785–86, 65 S.E. at 100. Similarly, in *Heck,* this Court held that a condition that a deed would be valid only if a copy were furnished to the defendant was ineffective. 88 W.Va. at 112, 106 S.E. at 417. Syllabus point three of *Heck* establishes: "A deed or other instrument conveying an interest in real estate cannot be delivered to the grantee in escrow. A delivery to him, even though stipulated to be upon certain conditions, will be treated as an absolute delivery." *Id.* at 102–03, 106 S.E. at 413. Likewise, in *Rouss v. Rouss,* 90 W.Va. 646, 111 S.E. 586 (1922), this Court explained that an allegation of an agreement to hold the deed "amounts to nothing." *Id.* at 652, 111 S.E. at 588. The delivery of the deed by the grantor to the grantee is absolute since a deed cannot be delivered in escrow. *Id.*

In *Liggett v. Rohr,* 122 W.Va. 166, 7 S.E.2d 867 (1940), an instrument in the form of a land grant by parents to their children was properly executed and delivered. It contained, however, a provision that it was not to take effect until the mother's death. Finding that a conditional deed is still deemed a valid immediate transfer, this Court held that the children were "vested with an immediate estate." *Id.* at 169, 7 S.E.2d at 869. The *Liggett* Court relied upon the prior decision of *Lauck v. Logan,* 45 W.Va. 251, 31 S.E. 986 (1898). In *Lauck,* parents had executed and delivered a land deed to their son, containing the following clause: "But it is hereby distinctly understood and stipulated that this

deed shall take and be in full force and effect immediately after the said William Logan shall depart this life, and not sooner." *Id.* at 252, 31 S.E. at 987. The *Lauck* Court held that the instrument was a valid deed and conveyed a present estate to the grantee.

In *Rust v. Commercial Coal & Coke, Co.,* 92 W.Va. 457, 115 S.E. 406 (1922), the grantors conveyed property to their daughter, with the following clause: "It is here fully understood that this deed is not to take effect until after the death of the said Truman Gore...." *Id.* at 460, 115 S.E. at 407. This Court ruled:

That the grantor reserved a life estate to himself does not affect the matter. What we are to consider is the estate granted, not what was reserved. Nor do we think that the provision in the deed that it is not to take effect until after the death of Truman Gore has any bearing on the case....

. . . .

Under the terms of the deed in the case at bar, Susan L. Gore was not entitled to possession until the death of Truman Gore but her estate vested upon execution and delivery of the deed....

*Id.* at 470, 115 S.E. at 411.

In *Hensley v. Swann,* 93 W.Va. 49, 115 S.E. 864 (1923), this Court recognized as follows: "[I]t has been repeatedly decided that a complete deed cannot be delivered to the grantee, to be held by him as an escrow. In such case the condition of delivery is void, and the deed becomes at once effective." *Id.* at 53–54, 115 S.E. at 865. Thus, an effective delivery of a deed is not invalidated by the attachment of conditions to the delivery.

▬ Based upon the foregoing, we agree with the contentions of the Appellants that any conditions Lewis Click may have attached to the delivery of the deed are without legal significance and did not render the delivery ineffective.[7]

### D. Evidence Presented in Attempt to Overcome the Prima Facie Presumption of Delivery

▬ Having established the prima facie evidence of delivery and the irrelevance of Lewis Click's imposition of the condition that the deed not be recorded until his death, we must address the burden upon Ms. Walls to overcome the presumption of valid and effective delivery. "To escape the operative effect of the conveyance manually or constructively delivered or actually or constructively accepted, the burden rests upon the grantor or those who claim under him or whose rights are jeopardized by the conveyance to prove the fact to be as he or they allege. In order to entitle such person to the relief he seeks, the proof must be certain or reasonably conclusive." *Downs v. Downs,* 89 W.Va. 155, 162, 108 S.E. 875, 877 (1921).

In attempting to overcome the presumption of an effective deed, Ms. Walls countered the Appellants' case in two distinct manners. First, Ms. Walls interjected speculation which essentially amounted to allegations of fraud; second, she contended that Lewis Click's continued management and involvement with the properties after the transfer of the deed evidenced lack of present intent to transfer the properties in 1993. We examine those issues separately below.

1. Allegations of Fraud or Impropriety

Counsel for Ms. Walls suggested as follows in the brief to this Court:

[The] jury was faced with two competing scenarios: 1) Lew [Lewis Click] gave the deed to David soon after its preparation, and David thereafter placed it in a safety deposit box where it remained until after Lew's death; or 2) Lew changed his mind about the conveyance, kept the document, which was later found by David after Lew's death and then recorded.

The deficiency in that reasoning is that no evidence was presented to support the Appellee's speculative contention that David did not obtain or retain possession of the deed. Further, while the Appellee did not specifically allege fraud, closing argument on behalf of Ms. Walls included numerous comments regarding alleged fraudulent scheming against Ms. Walls. Counsel indicated his own personal observation upon first learning the facts of the case by explaining, "I thought, 'Wow.' It just sounded wrong. I mean it was so dirty, that it made me want to

---

**7.** An instruction regarding the ineffectiveness of conditional delivery was not offered at trial.

go home and take a shower." In this regard, counsel substituted his own conjectures for "certain or reasonably conclusive evidence" of the motives or intentions behind Lewis Click's action in the absence of any clear and convincing evidence to support those conjectures. *Downs,* 89 W.Va. at 162, 108 S.E. at 877.

Counsel for Ms. Walls also intimated during closing argument that there was something corrupt about Lewis Click's transaction, alleging that his actions were "a fraud." Counsel for Ms. Walls stated that Lewis was compelled by "greed," that "[h]e welched on the deal," that "he went out and he created this scheme," and that "this was pretty slick." Counsel continued, "It's underhanded. It's ruthless." [8]

Discussing allegations of fraud in the context of deed delivery in *Evans,* this Court quoted, with approval, syllabus point one of *Hunt v. Hunt,* 91 W.Va. 685, 114 S.E. 283 (1922), which counseled as follows: "He who alleges fraud must clearly and distinctly prove it, either by circumstantial or direct evidence. It will not be presumed from doubtful evidence, or circumstances of suspicion. The presumption is always in favor of innocence and honesty." 150 W.Va. at 619, 148 S.E.2d at 718–19. Conjecture and unsupported insinuations do not overcome the presumption of valid delivery created by David Click's testimony that his father gave him the document and asked him to open a safe deposit box accessible by only David and Anne Click. To overcome the presumption of validity, the opposition must present more than mere innuendo or supposition. The contrary proof "must be certain or reasonably conclusive." *Downs,* 89 W.Va. at 162, 108 S.E. at 877. We conclude that the evidence presented by Ms. Walls was insufficient to overcome the Appellants' prima facie showing of delivery.

### 2. Lewis Click's Continued Involvement with the Properties

Ms. Walls also introduced evidence that Lewis Click continued to manage the properties in question after the 1993 deed, collecting rent on the properties, paying bills for the properties, and obtaining a loan on the basis of ownership of the properties. Lewis Click also received his homestead exemption for his interest in the property upon which he resided and continued to declare the income and expenses generated from the properties on his personal income tax returns.[9]

Ms. Walls asserted that Lewis Click's continued involvement with the operation and management of the properties contradicted the assertion that he had intent to transfer the properties to his wife and son. Indeed, this Court has acknowledged that subsequent events may illuminate issues of prior intent. In the syllabus of *French v. Dillon,* 120 W.Va. 268, 197 S.E. 725 (1938), this Court explained as follows:

---

8. Counsel for Ms. Walls asserted in closing argument that the deed was never truly out of Lewis Click's dominion and control even though he *asked David to open the safety deposit box* accessible only by David and Anne. According to counsel's closing argument, Lewis Click always had the ability to retrieve the document from his son: "[Y]ou have got to ask yourself one question. If in 1996 or '97 or even in '98 prior to his death, if Lou Click would have said, David, go down to that box and pull that deed out and bring it to me, what would have happened?" Counsel suggested that David would have brought the document back to his father.

Father tells you to go in the corner and stand on your head, you'd probably do it to appease him. Especially when it comes down to a business transaction where you're dealing with your father's property. It's really Lou's property. He's giving it to his son and wife. It's really his.

The difficulty with this argument is that there was no evidence underlying it.

9. The Appellee alleged that the following actions constituted evidence of lack of intent of the grantor to vest the properties in his wife and son:

Homestead Exemption: Mr. Click represented that he was the owner of the property and obtaining a tax benefit for four to five years of approximately $350.00.

Signature on Lease Contracts: Mr. Click signed leases with tenants, representing that he was the owner of the properties.

Loan Application: Mr. Click represented that he owned the properties when he obtained a line of credit to pay for application of vinyl siding on a duplex on one of the rental properties.

Income Tax Returns: Mr. Click showed income from the property on his income tax returns.

Management of the Property: Mr. Click and Ms. Walls continued to manage the properties, including such activities as collection of rent and arrangements for repairs of the properties, without assistance from David or Anne Click.

To constitute legal delivery of a deed, the grantor must intend that it presently vest in the grantee the estate purportedly conveyed. The handing of the deed to the grantee without that intent is not delivery. The purpose of the manual delivery may be shown by circumstances. Among the circumstances admissible are the subsequent control of the property described in the deed, and the subsequent conduct of the parties.

Of extreme distinguishing import, however, is the fact that the grantor in *French* maintained possession of the actual deed instrument. The deed was found with other papers of the grantor after his death. Additionally, there was conflicting testimony regarding the delivery of the document, some witnesses testifying that delivery was intended and others indicating that the grantor stated that he never delivered the deed and did not intend to. Upon the conflicting evidence and based upon the grantor's possession of the deed at the time of death, this Court held that there had been no delivery of the deed. 120 W.Va. at 271, 197 S.E. at 727.

In *Reed v. Gunter,* 101 W.Va. 514, 133 S.E. 123 (1926), the fact that the grantor remained in possession of the land was also considered among numerous other factors. As in *French,* the grantor in *Reed* had retained control of the deed instrument, and the deed was found among his private papers at his death. The grantor's retention of the document raised "a presumption that the deed was never intended to pass the grantor's title...." *Id.* at 518, 133 S.E. at 124.

■ In contrast to cases in which subsequent actions of the grantor induced findings of lack of intent to convey, the Appellee in the case sub judice presented no evidence that Lewis Click lacked intent to transfer his interest in the properties to his wife and son at the time he transferred the deed in 1993. She presented no evidence that David or Anne distorted the truth in any manner or

that they did not have possession of the deed from 1993 until Mr. Click's death. The Appellee's case rests upon the assertion that the subsequent actions of the grantor disproved his intent to convey the properties. Yet those very acts are not wholly inconsistent with the Appellants' presentation of the case: specifically, that Lewis Click wanted to continue to manage the properties for his wife and son while he was living; that he handled all financial affairs for his wife and executed documents on her behalf;[10] that Lewis Click indicated his intent that the deed not be recorded until after his death; and that the "conditions" of delivery such as continuing to manage the properties or not recording the deed until after Lewis Click's death do not invalidate the immediate and effective delivery of the deed in 1993.

■ In advancing her argument regarding subsequent actions of the grantor, the Appellee emphasized the perceived inequity in permitting an individual to convey property and thereafter represent, in financial and tax documents, that he owned that property. While initially attractive, those arguments are extraneous to the primary issue posed: Did Mr. Click intend to convey his interest in the properties? Alleged misrepresentations, in pursuit of financial gain, are a separate issue from intent to convey property. The Appellee essentially asked the jury to punish the grantor for perceived misrepresentations and to "honor a contract" with Ms. Walls[11] by discrediting a property conveyance to Mr. Lewis' wife and son.

## IV. Conclusion

■ As observed above, the role of the appellate tribunal in a case of this nature is limited. This Court will only overturn a jury verdict where "the evidence is shown to be legally insufficient to sustain the verdict." *Alkire,* 197 W.Va. at 128, 475 S.E.2d at 128. In discussing the soundness of this jury verdict and the role of this Court in reviewing such jury verdict, the Appellants questioned whether this matter was appropriate for jury consideration. The Appellants contended in

---

10. Ms. Walls conceded during trial that Lewis Click would typically have continued to sign documents and conduct financial and business transactions on behalf of his disabled wife, Anne.

11. By referencing "a contract" in closing argument, counsel for Ms. Walls was presumably referring to the original ownership of the properties with Ms. Walls as a joint tenant with a right of survivorship.

oral argument to this Court that this was not a case in which jury consideration was imperative since the essential facts were not in controversy. Only the legal conclusions to be drawn therefrom were undetermined. This Court stated as follows in syllabus point three of *Daugherty v. DeWees*, 172 W.Va. 553, 309 S.E.2d 52 (1983): " 'Whether there has been a delivery of a deed is a question of fact rather than of law depending upon the intent of the grantor to vest an estate in the grantee.' Syl. pt. 2, *Parrish v. Pancake*, 158 W.Va. 842, 215 S.E.2d 659 (1975), *quoting, Garrett v. Goff*, 61 W.Va. 221, 56 S.E. 351 (1907)." None would quarrel with the assertion that a question of fact is raised by the presentation of conflicting evidence regarding whether a delivery actually occurred. However, the issue of "[w]hether a particular set of facts constitutes an effective delivery" has been held to be a "question of law" even though "the question of whether there has, in fact, been a delivery is a question which must be decided by the trier of fact." *Majestic Bldg. Corp. v. McClelland*, 559 S.W.2d 883, 885 (Tex.Civ.App.1977). Similarly, in *Oberholtz v. Oberholtz*, 79 Ohio App. 540, 74 N.E.2d 574 (1947), the Ohio court held that "[w]hether there was a delivery, in the legal sense, under a state of facts, is a question of law; however, it is a question of fact whether the facts, which the law requires to constitute the delivery, exist and are proved." *Id.* at 577.

An explanation of that subtle distinction is offered as follows:

What constitutes a delivery of a deed is a question of law, but whether there has been a valid delivery generally presents a mixed question of law and fact. The facts and circumstances of the case must be considered, and from their detail is to be determined the legal question whether such acts and declarations constitute a legal delivery. In some instances, the acts or words of the grantor may so clearly evidence the delivery of a deed that only one conclusion can be reached as to the delivery-namely, that the instrument be-

came an operative conveyance-and in such case delivery may be determined as a matter of law. In most cases, however, delivery is to be inferred from circumstances which by their very nature are equivocal and depend upon the subjective state of mind of the grantor. In such cases delivery becomes a question of fact and cannot be determined as a matter of law. This may be true even where the deed is placed in the actual possession of the grantee. Where the question of delivery is dependent entirely upon intention, it is to be determined from all of the evidence bearing upon the issue, including the conduct of the parties. The questions whether the requisite intent to make delivery existed, and whether the grantor executed his intention to pass title by a sufficient delivery, are both questions of fact and generally for the jury.

23 Am.Jur.2d, *Deeds* § 130 (1983).

Attempting a resolution of this issue and discussing the findings of fact regarding delivery of the deed in *Evans*, this Court reasoned as follows:

We are of the view, however, that in a great measure the decision of this case calls for a proper application of legal principles to facts which are without substantial dispute. It is true that there is some conflict in the testimony but we believe it not so material or pertinent to the legal principles involved to permit more than one finding from that evidence.

150 W.Va. at 614, 148 S.E.2d at 716.[12]

█ As in *Evans*, we believe that the present case requires this Court to apply legal principles to established facts. Upon thorough review of the briefs, arguments of counsel, the record, and applicable precedent, we conclude that the lower court erred in failing to grant the Appellants' motion for judgment as a matter of law. Viewing the evidence in a light most favorable to Ms. Walls, we conclude that such evidence was inadequate to overcome the prima facie showing of effective delivery and that the

**12.** In *Fraternal Order of Police v. Fairmont*, 196 W.Va. 97, 468 S.E.2d 712 (1996), this Court noted as follows:

Many cases involve what courts term "mixed" questions—questions which, if they

are to be resolved properly, necessitate combining fact-finding with an elucidation of the applicable law. The standard of review applicable to mixed questions usually depends upon where they fall along the degree-of-deference

evidence was legally insufficient to support the jury verdict. Syllabus point nine of *Bluefield Supply Co. v. Frankel's Appliances, Inc.,* 149 W.Va. 622, 142 S.E.2d 898 (1965), provides:

When, upon the trial of a case, the evidence decidedly preponderates against the verdict of a jury or the finding of a trial court upon the evidence, this Court will, upon review, reverse the judgment; and, if the case was tried by the court in lieu of a jury, this Court will make such finding and render such judgment on the evidence as the trial court should have made and rendered.

The singular conclusion warranted by the essentially uncontroverted evidence is that Lewis Click intended to divest himself of his one-half interest in the three properties and transfer that interest to his wife and son. It is incumbent upon this Court to reverse the lower court and remand with directions to order judgment for the Appellants.

Reversed and remanded with directions

---

continuum: "The more fact dominated the question, the more likely it is the trier's resolution of it will be accepted unless shown to be clearly erroneous." *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 106, 459 S.E.2d 374, 383 (1995).
*Id.* at 100 n. 3, 459 S.E.2d 374, 468 S.E.2d at 715 n. 3.