Z. S. FRENCH *v.* J. C. DILLON, *Sheriff, etc. et al.*

(No. 8756)

Submitted May 24, 1938.   Decided June 14, 1938.

*Sanders & Day* and *Walter G. Burton,* for appellants.
*T. L. Read,* for appellees.

HATCHER, JUDGE:

This controversy involves the delivery of a deed.

In January, 1933, Estell French, a prosperous farmer and merchant, and his wife signed, sealed and acknowledged a deed, voluntarily conveying to their only child, Zeb, certain real estate in Summers County, to-wit, the French homeplace of 153 acres, the Wiley Island of 30 acres and the Newkirk tract of 41 acres, together with all the farming machinery and live stock on the several tracts.   Zeb then resided and continued to reside in another county.   Estell then resided and continued to reside on the homeplace and continued to treat

it and the other property described in the deed as his own. Mrs. French died in August, 1935, and Estell died in October, 1936. The deed, unrecorded, was found with his papers after his death. In September, 1936, while admittedly in sound mind, and after due deliberation, he executed a will devising 26 acres of Wiley's Island to Claude and Clayton Williams; the Newkirk place to Daisy Williams; and the remainder of the real estate mentioned in the deed (including the homeplace) to Zeb. The testator bequeathed all his personal property to Zeb, except farm equipment and tools which he bequeathed to Claude, Clayton and Daisy. A "friendly" relation had existed between Estell and the Williams devisees (all minors) and their mother for a long time and they lived with and helped care for him during the last months of his life.

This is a suit by Zeb to construe the will and to cancel it so far as it relates to those gifts to the Williams children, as a cloud upon his title under the deed. The circuit court decreed in his favor.

There is testimony tending to show that Estell never intended the deed to be effective; there is other testimony tending to show that he did. There is testimony of statements by him after the date of the deed, consistent with his continued ownership of the property; there is other testimony of statements by him after that date inconsistent with such ownership. There is testimony by interested parties of transactions with him which, under Code, 57-3-1, we cannot consider. A nephew resided with him in January, 1933, who testified that he saw Estell hand the deed to Zeb, saying that the latter should now assume the worry of managing the deeded property. Zeb's wife testified that she saw the deed in his possession in their home, but did not know how long the deed remained there. Against the testimony of Zeb's wife and his cousin, is testimony that Estell said he had never delivered the deed to Zeb, and the facts that, after the date of the alleged delivery, Zeb did not manage the deeded property; that Estell continued to manage and to

treat it as his own; that while in sound mind he thought he had the sole right to dispose of it; and that the deed, unrecorded, was in his possession when he died.

A written opinion of the circuit court shows the chancellor to have taken the view that the deed was manually delivered by the father to the son in January, 1933, and that the subsequent conduct of the parties, inconsistent with an absolute delivery, could not be considered. We are of opinion that this view is erroneous. To constitute legal delivery of a deed, the grantor must intend that it presently vest in the grantee the estate purportedly conveyed. *Gaines* v. *Keener,* 48 W. Va. 56, 35 S. E. 856; *Garrett* v. *Goff,* 61 W. Va. 221, 56 S. E. 351. The handing of a deed to a grantee without that intent is not delivery. "The mere placing of a deed in the hands of the grantee does not necessarily constitute a delivery. The question is one of intention whether the deed was then intended by the parties to take effect according to its terms." *Weig'and* v. *Rutschke,* 253 Ill. 260, 97 N. E. 641, 642. Accord: *Tewksbury* v. *Tewksbury,* 222 Mass. 595, 111 N. E. 394; *Melvin* v. *Melvin,* 8 Cal. App. 684, 97 Pac. 696; *Bremyer* v. *School,* 86 Kan. 644, 122 Pac. 104; *Terry* v. *Glover,* 235 Mo. 544, 139 S. W. 337; *Telschow* v. *Quiggle,* 74 Ore. 105, 145 Pac. 11; *Ball* v. *Sandlin,* 176 Ky. 537, 195 S. W. 1089; *Holbrook* v. *Truesdell,* 100 App. Div. 9, 90 N. Y. S. 911. The intent of the grantor may be shown by circumstances. *Furguson* v. *Bond,* 39 W. Va. 561. Among the circumstances admissible are "the subsequent possession of the premises" and "the subsequent conduct of the parties." 18 C. J., Deeds, sec. 524. Accord: *Chamberlain* v. *Larsen,* 83 Utah 420, 29 Pac. (2d) 355; *Couch* v. *Hoover,* 18 Tenn. App. 523, 79 S. W. (2d) 807; 4 Ency. of Ev. 172. The facts that three years passed after the date of the alleged delivery without the deed being recorded, and that it was in the possession of the grantor at his death, raise a strong presumption that if the deed was handed to Zeb in 1933, it was not intended as an immediate conveyance of title. *Foreman* v. *Roush,* 87 W. Va. 341, 105 S. E. 157. This

presumption is strengthened by Estell's subsequent control of the deeded property and his attempt while in sound mind to dispose of it by will. There is no legitimate testimony which materially weakens the presumption.

The decree is reversed and the cause remanded.

*Reversed and remanded.*