MAUDIE WELLS EVANS, *et al.*

*v.*

JANE WELLS BOTTOMLEE

(No. 12537)

Submitted May 4, 1966.          Decided June 14, 1966.

*Arch J. Alexander, Jr., Peters, Merricks, Leslie, Kenna & Mohler, Lee M. Kenna,* for appellant.

*Kay, Casto & Chaney, John S. Haight, Edward H. Tiley,* for appellees.

BROWNING, JUDGE:

Plaintiffs, three sisters and heirs-at-law of Mrs. Pearl Hamb, who died intestate on June 20, 1964, brought this

action in the Circuit Court of Kanawha County to cancel and declare null and void a certain deed from Pearl Hamb to the defendant, Jane Wells Bottomlee, a niece and heir-at-law of Mrs. Hamb. The deed in question, dated March 2, 1964, and purporting to convey all of Mrs. Hamb's real property in the town of Marmet, West Virginia, to the defendant, is alleged to be invalid on the grounds of: lack of execution or delivery; mental incapacity of the grantor; and, the result of the exercise of undue influence on the grantor. The case was tried by the court without a jury and judgment was entered for the plaintiffs, the court holding that although Mrs. Hamb had sufficient mental capacity and no undue influence was practiced upon her she did not execute or deliver such deed to the defendant on the date in question or at any other time, to which judgment this Court granted an appeal and supersedeas on December 6, 1965.

The evidence adduced in behalf of plaintiffs is substantially as follows: Mr. Charles Appel, Jr., a questioned document expert of notable experience in his field, stated that in his opinion, after thorough examination of the signature on the deed in question in comparison with known signatures of Mrs. Hamb, the signature on the deed was not executed by Mrs. Hamb ". . . but was composed by somebody else very carefully so as to resemble the model signature which was being copied." Mr. Conker, an employee of the Kanawha Valley Bank who was sent to appraise the property in connection with an application for a loan made by the defendant on March 11, 1964, testified that he met with the defendant on the property and was conversing with her when they were accosted by an elderly lady who inquired the reason for his presence; he informed her of the reason, whereupon, in defendant's presence, the lady stated that she owned the property and did not desire a loan, and that defendant made ". . . no argument about it." The witness described the lady as "a real old woman" with "I think it was gray" hair. Defendant was then called by plaintiffs for a limited examination upon this question and testified that Mrs. Hamb had "coal black" hair, she

did not converse with Conker in the presence of Mrs. Hamb, and she did not pursue the application for a loan from the Kanawha Valley Bank because "it was going to take too long. . . ." A loan was then obtained from a private source in April, defendant receiving $8,500.00 by executing a note in the sum of $9,500.00. This note was paid off in August, 1964. Plaintiffs then introduced four witnesses upon the question of Mrs. Hamb's mental capacity, three of whom doubted her capacity to execute a deed but all based their opinions upon an increasing forgetfulness or lack of memory at times while at other times Mrs. Hamb appeared her normal self. One of the witnesses also testified that Mrs. Hamb's only income, other than a small government check, was received from the property purportedly conveyed by the deed to the defendant. Introduced as exhibits by the plaintiffs were: the deed of March 2, 1964, from Pearl Hamb to the defendant, showing a notarial certificate dated March 2, 1964, and a notation admitting it to record upon presentation by the attorney for defendant on April 8, 1964; an unexecuted deed dated February 19, 1964, between Pearl Hamm and defendant; the first page of a deed identical to the executed deed with the exception that the words "with appurtenances thereunto belonging" are omitted; an unexecuted will of Pearl Hamb, dated the _____ day of March, 1964, devising to "Jane Wells Bottomlee and Walter Leon Bottomlee, all of my property, both real personal or mixed, wheresoever situate, to be hers (sic) absolutely and in fee." with one dollar each to her other relatives; a rental agreement executed February 29, 1964, extending a previous agreement, applicable to a garage or building on the property which would expire on November 1, 1964, to December 31, 1966; receipts for rent dated February 8, March 15, April 8 and May 10, all in the year 1964; and several known signatures of Mrs. Hamb. At the conclusion of plaintiffs' evidence the defendant moved for a directed verdict which was overruled upon the question of execution, delivery and mental incapacity but sustained as to the question of undue influence.

Defendant introduced the testimony of the notary public, her attorney, a witness to the signing of the deed, and two witnesses as to the mental capacity of Mrs. Hamb. The notary, employed as a secretary in the office of defendant's attorney, testified that: she prepared, pursuant to her employer's direction, the original draft of the deed, dated February 19, 1964, which she took to Mrs. Hamb to sign; she read the instrument to Mrs. Hamb whereupon Mrs. Hamb detected the misspelling of her name and that deed was not executed. She then returned to her office where the deed was retyped. This second draft, dated March 2, 1964, was picked up by the defendant the evening of March 1, 1964, and the witness went to Mrs. Hamb's residence about noon the next day at which time the defendant, Mrs. Hamb, the defendant's brother and the brother's wife were present. The deed had been signed before she arrived but she again read the deed to Mrs. Hamb and asked Mrs. Hamb if that was her signature, to which Mrs. Hamb replied affirmatively. The deed consisted of three pages and she returned with it to the office for purposes of having it recorded. Subsequently, on the same day, an additional correction or alteration was made, in the course of which page one was retyped so as to include the words "and appurtenances thereunto belonging", and this amended page one was inserted in the manuscript cover. The witness returned to Mrs. Hamb's with this third draft, the second two pages of which remained the same and contained the signature and certificate theretofore executed, explained the alteration to Mrs. Hamb and had her orally "reacknowledge" her signature although no new notarial certificate was added. This witness also stated that previous to this transaction, she had taken the will in evidence to Mrs. Hamb, explained it to her, and Mrs. Hamb did not execute it but ". . . wanted to think about the wills. . . ." Kenneth R. Pierce, the second party to the rental agreement executed on February 29, 1964, stated that Mrs. Hamb had the mental capacity to execute a deed at that time. On cross-examination the witness stated that at that time Mrs. Hamb made no mention of the fact that she contemplated making a conveyance of the property and he continued to pay his

monthly rentals to Mrs. Hamb until he was informed by the defendant that Mrs. Hamb was misplacing her checks and as a matter of convenience to Mrs. Hamb, further payments should be made to the defendant. A Mrs. Ayers testified that she approached Mrs. Hamb in March, 1964, with regard to the rental of a house on the property. Mrs. Hamb wanted to discuss the matter with the defendant and the witness returned the next day and an agreement was reached whereby Mrs. Ayers and her husband would make repairs to the house in exchange for two months rent, which would not begin until May, 1964. In May, the witness was asked by Mrs. Hamb to hand her a receipt book which bore the names of Mrs. Hamb and the defendant ". . . and she said she would give me a receipt from Bertha Jane [the defendant] that the property was in her name also, or the property would be hers." Upon examination by the court as to whether she remembered if Mrs. Hamb had said that the property was in the defendant's name or would be the defendant's, the witness answered "Not exactly, but it was one way or the other." Defendant's attorney testified that: he represented the defendant throughout the transaction; the changes in the deed and the actions of his secretary, the notary, were done at his direction; he did not record the deed until the recording fees were received; and, the deed was returned to him by the defendant after the second acknowledgment. The brother of the defendant, also an heir-at-law of Mrs. Hamb, testified that he, his wife, the defendant and the notary were all present when Mrs. Hamb signed the deed and that the notary did not inquire of Mrs. Hamb if it were her signature but only asked Mrs. Hamb if she understood the instrument, to which Mrs. Hamb replied affirmatively. This witness also testified that he later saw the deed in his sister's house.

Of the three issues presented upon the pleadings of this case, that is, (1) the mental incapacity of grantor; (2) undue influence upon the grantor; and, (3) whether the deed in question was executed and delivered, the trial court sustained a motion of the defendant for judgment as to issue No. 2 at the conclusion of plaintiffs' evidence and the

final judgment shows that the trial court found that there was not a sufficient showing of lack of mental capacity to justify the setting aside of the deed upon that ground, and upon both of these issues we affirm the ruling of the trial judge believing that he was correct in that regard. The crucial issue in this case is as to the execution and delivery of the deed by the grantor. The trial court found upon that question that the deed "was not executed and delivered by Pearl Hamb, and should therefore be set aside", cancelled and declared void.

In the recent case of *State Farm Mutual Auto. Ins. Co.* v. *American Cas. Co.,* decided March 1, 1966, 150 W. Va. 435, 146 S. E. 2d 842, this Court held, as it always has, that "It is fundamental that this Court will give due weight to findings of fact made by a trial court in a case tried by it without a jury. This general principle, substantially as it was recognized before the promulgation of the Rules of Civil Procedure, has been embodied in R. C. P. 52 (a) in the following language: 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the *opportunity of the trial court to judge of the credibility of the witnesses.*'" This rule as was stated in that case with the citation of many previous cases to the same effect is that "findings of fact made by trial courts sitting in lieu of juries is applied with greater force in cases in which testimony of witnesses has been heard *ore tenus* by the trial court." This case was heard *ore tenus* by an able and distinguished trial judge. We are of the view, however, that in a great measure the decision of this case calls for a proper application of legal principles to facts which are without substantial dispute. It is true that there is some conflict in the testimony but we believe it not so material or pertinent to the legal principles involved to permit more than one finding from that evidence. The testimony of the handwriting expert, Appel, is to the effect that the name of the deceased, Pearl Hamb, signed to this deed was not only not her signature but that it obviously was written by someone who was deliberately attempting to make the signature look like hers. This is the second

syllabus point of *Barbee* v. *Amory*, 106 W. Va. 507, 146 S. E. 59: "A forged deed is a nullity, and neither the grantee nor those claiming under him can acquire any title under such deed." In *Garrett* v. *Goff*, 61 W. Va. 221, 56 S. E. 351, this is the third syllabus point: "There can be no acceptance of a deed by a vendee without a delivery thereof by or on behalf of the vendor." Briefly, the facts in that case were these: plaintiff, after execution and acknowledgment by the grantors, placed the deed in question in the hands of one Starkey to be delivered to the defendant when the defendant should execute and deliver to Starkey for plaintiff another deed conveying a tract of land consisting of one hundred twenty-five acres; this the defendant did not do, but instead plaintiff secured the deed from Starkey "under the pretense of placing upon it proper Internal Revenue Stamps and [the deed] was not returned to Starkey but in some way came into the possession of defendant who caused the same to be recorded, as he claims and so testified, for safe keeping and not at all as an acceptance of the deed." Upon those facts the Court, of course, held that there had been no delivery. In *French* v. *Dillon*, 120 W. Va. 268, 197 S. E. 725, the only syllabus point reads as follows: "To constitute legal delivery of a deed, the grantor must intend that it presently vest in the grantee the estate purportedly conveyed. The handing of the deed to the grantee without that intent is not delivery. The purpose of the manual delivery may be shown by circumstances. Among the circumstances admissible are the subsequent control of the property described in the deed, and the subsequent conduct of the parties." The facts show one French and his wife deeded certain tracts of land to their son Zeb, in January, 1933, the grantors signing, sealing and acknowledging the deed. French died in October, 1936, his wife having preceded him in death in August, 1935. In September, 1936, about a month before his death, French "in sound mind, and after due deliberation," executed a will devising some of the allegedly conveyed property to his son Zeb and the remainder to others. The deed in question was never placed upon record but was found with other papers of the elder French after his

death. There was testimony, pro and con, as to delivery, with Zeb, Zeb's wife and a cousin testifying that delivery was intended, whereas others said that the elder French had stated that he never delivered the deed to Zeb, that he did not intend to, and from the date of the deed until his death he had managed the property in question, and prior to his death there had never been any contention by Zeb that he was the owner of the property. This Court properly held, upon the conflict of evidence and the uncontradicted facts, that there had been no delivery of the deed.

Somewhat to the converse of the *French* case were the facts in *McConnell* v. *Rowland,* 48 W. Va. 276, 37 S. E. 586. In that case the plaintiffs conveyed a house and lot in consideration of one hundred forty dollars paid and the further consideration of a deed for five vacant lots. It developed that title to these lots was not clear and plaintiff refused to deliver the deed. The deed was placed in the custody of one Kemery and thereafter the grantee Cole "surreptitiously obtained possession of plaintiff's deed, placed the same on record, and then sold and transferred the property to the defendant George W. Rowland, an innocent purchaser for value. Cole had possession of the property and turned it over to Rowland." The issue here was between two innocent persons and the Court, finding the plaintiff guilty of laches, chose to confirm the conveyance, though stating "The deed having been virtually stolen and placed on record, equity has jurisdiction to cancel it and place the parties in *statu quo.*" In *Andre* v. *Hoffman,* 81 W. Va. 620, 95 S. E. 84, one of the issues was whether certain deeds were forged "and that the same should be cancelled as clouds upon the plaintiff's title". The rule laid down in *Hill* v. *Land Co.,* 70 W. Va. 221, 73 S. E. 718, was distinguished, the Court stating that in the latter case the evidence "offered against the deed was the testimony of the grantor therein that the signature thereto was not genuine." The Court noted in the opinion that the acknowledgment of the officer before whom the grantor had executed the deed was controlling, then stated: "No such conditions exist here. In this case the testimony of the alleged grantor

is corroborated by other admitted forgeries committed by the grantee in connection with the same transaction, by many other fraudulent and deceitful practices of his in connection therewith, by the testimony of the officer before whom the acknowledgment was taken that Mrs. Andre was not the woman who acknowledged it, and is further corroborated by the fact that Hoffman, though a party to the suit and available, does not testify in support of the deeds."

While the degree of proof required in the ordinary civil case is by a preponderance of the evidence, the burden upon the plaintiffs in the instant case is much more exacting. This is the first syllabus point of *Roberts* v. *Gas Co.,* 89 W. Va. 384, 109 S. E. 348: "In order to impeach the certificate of acknowledgment of a duly authorized officer, the proof thereof must be clear, cogent, satisfactory and controlling beyond reasonable doubt." The issue in that case was whether one Dortha D. S. Billups had signed and acknowledged a disclaimer of title. There was no question that her husband had signed the instrument and he so stated as a witness. There was evidence that his wife had refused to sign it and stated that "she never would". She was illiterate and usually signed instruments by mark but this instrument was signed in this manner: "Dorthy Billups". The notary who was alleged to have taken her acknowledgment was dead. In the opinion the Court said: "As observed, nearly three months elapsed between the date of the instrument, when Billups may have signed it, and when Mrs. Billups may have refused to do so, as Billups says, when she 'kind of kicked,' and the date of the acknowledgment, when according to Billups and other witnesses, she may have relented and actually authorized her husband or some one else to sign the contract, and herself acknowledged it before the notary public. His certificate, a quasi judicial act, so certifies at all events." The following statement in that opinion paraphrases language used by this Court in previous cases: "Are these facts and circumstances and the testimony of these witnesses sufficient to overthrow and brand as forgery a solemn deed or instrument, twenty-five years after it purports to have been executed before

a public officer? If so, there is little safety in the titles to land. The treachery of memories, and the cupidity and averice of former owners and claimants of the land would be sufficient to overthrow deeds and other instruments. The rule of law laid down in this state, as elsewhere, is that in order to impeach the certificate of acknowledgment of a duly authorized officer, the proof must be clear, cogent, satisfactory and convincing beyond reasonable doubt or controversy.", citing cases. This is the fourth syllabus point of *Swiger* v. *Swiger,* 58 W. Va. 119, 52 S. E. 23: "The certificate of the acknowledgment of a deed imports verity, and cannot be overcome, except by clear and satisfactory proof. The evidence of the grantor denying the execution of the deed *and the opinion of experts* that the signature thereto is not that of the grantor, are not sufficient." (Italics supplied.) The facts in that case upon which the verity of the acknowledgment was upheld are not nearly as strong as they are in the instant case. Like this case there was no charge in the pleadings that the notary had acted fraudulently or that he did not make his certificate in good faith. However, in that case the notary was dead at the time the litigation arose and of course did not testify as did the notary in the instant case. The case for setting aside the deed in the *Swiger* case also contained the testimony of the grantor denying the execution of the instrument whereas here the grantor was dead at the time of the trial. In *Hill* v. *Land Co.,* 70 W. Va. 221, 73 S. E. 718, the decision is epitomized in syllabus point four as follows: "Denial of the execution of a deed and acknowledgment thereof, unaided otherwise than by the facts that the signature is by mark and the party could write and denies having ever signed any papers by mark, is not sufficient to overcome a certificate of acknowledgment, nearly thirty years old and pronounced genuine by the officer who certified the acknowledgment." In discussing the grantor's testimony to the effect that she had not signed and acknowledged a deed when it contained her signature and the certificate of a notary, the Court said: "Under such circumstances, it is fair to say failing and treacherous memory should not prevail over a solemn contemporaneous memorial, sustained by the testimony of

a reputable citizen who made it." *Pickens* v. *Knisely,* 29 W. Va. 1, 11 S. E. 932, is cited for this statement: "Except for fraud or collusion, the certificate of acknowledgment is conclusive upon the grantor, . . ."

In *Hunt* v. *Hunt,* 91 W. Va. 685, 114 S. E. 283, the plaintiff brought her suit in the Circuit Court of Jackson County for the purpose of having cancelled a deed alleged to have been executed by the plaintiff, in which her husband joined, conveying a forty-five acre tract of land in that county. The husband was dead at the time the case was heard. The plaintiff alleged that her signature had been obtained by fraud and that the deed had never been delivered to the grantee. As to the allegation of fraud this Court held in syllabus Pt. 1 that: "He who alleges fraud must clearly and distinctly prove it, either by circumstantial or direct evidence. It will not be presumed from doubtful evidence, or circumstances of suspicion. The presumption is always in favor of innocence and honesty." In elaborating upon that syllabus point Judge Lively in the opinion said: "It is the universal rule that fraud, to be established by circumstantial evidence or by direct testimony, must be clearly and satisfactorily proved. It will not be presumed from doubtful evidence, or circumstances of suspicion. It cannot be presumed. The presumption is always in favor of innocence and honesty. . . . The rule is so universally acknowledged, it would serve no useful purpose to cite authorities. A fraudulent intent must be shown to have existed in the mind of the person who is accused of perpetrating the fraud." Upon the question of delivery, the Court stated: "It is true that the mere acknowledgment of a deed is not conclusive evidence of its delivery, but it is a circumstance tending to show delivery. . . . The fact that the deed was recorded, evidently passing through his hands, and reaching the county clerk's office within nine days after its acknowledgment, is a circumstance which is almost conclusive that delivery was made. The possession of a deed executed and acknowledged with all formalities is *prima facie* evidence of its delivery." In *Heck* v. *Morgan,* 88 W. Va. 102, 106 S. E. 413, the Court held that the grantee

in a deed who returns it to the grantor for the purpose of having it acknowledged does not thereby surrender the title of the land already acquired by the deed. The Court further held in that case that "Possession by the grantee of a deed or instrument conveying an interest in real estate is *prima facie* evidence of its delivery.", and that a deed to realty cannot be delivered to the grantee in escrow.

The case of *Waldron* v. *Waller*, 65 W. Va. 605, 64 S. E. 964, is cited and quoted from in both the opinion of the trial court and the briefs of appellees in this Court. That case is cited for the principle that a deed, materially altered after it has been executed, acknowledged and delivered by the grantor, requires redelivery to be effective, and re-acknowledgment when necessary, and it is contended that the verity imported to the certification of the notary does not therefore obtain in the instant case because of the alteration of the deed in question by the addition of the words "with appurtenances thereunto belonging". Such contention is not well taken. This is the third syllabus point of the *Waldron* case: "If, after it has been executed and delivered, a deed for land, with the consent of the grantors, be altered so as to make it describe a larger boundary, in order to make it effective to convey the additional land it should be redelivered, and if it has been acknowledged before the alteration it should be again acknowledged." Judge Miller in the opinion said: "The bill seems to have been framed and to proceed upon the theory that where a deed of conveyance has been altered by or at the instance of the grantee, in a material matter, such alteration not only destroys the deed, but also entitles the grantor to be re-invested with the title to the land as conveyed. This, however, is not the law. As stated by Mr. Devlin, 1 Devlin on Deeds, section 460, 'The true rule seems to be that if the deed is altered after execution by a party claiming some benefit under it, or by his privity, its operation as an executed contract is not affected.' And that 'titles vested by it are not disturbed, but the party making the alteration is deprived of all future benefits that he might have derived from it, and cannot enforce any executory

obligation contained in it.' When the title to land has once vested, any alteration in the deed, made by the grantee, though material, will not deprive him of his title or reinvest it in the grantor. If anything is destroyed by the alteration it is the deed and not the title. A deed may be altered, mutilated, changed or wholly destroyed so as to be no longer competent evidence, or capable of being introduced in evidence, yet the title vested by the grant is not thereby destroyed." It will be observed, as heretofore noted, that there was no material change in the deed in the instant case between the time that the grantor acknowledged her signature to it before the notary and the time when it was re-read for her approval, the first page having been rewritten to contain the phrase "and all appurtenances thereunto belonging". Not only is that phrase of utterly no materiality to the conveyance but Code, 36-3-10, specifically provides that "Every deed conveying land shall, unless an exception be made therein, be construed to include all buildings, privileges and appurtenances of every kind belonging to the lands therein embraced."

While the trial judge, at the time he made his decision and filed his opinion, which has been made a part of the record in the case, did not have available the transcript of the evidence of all of the witnesses, the record is complete before us and in this regard we are at somewhat of an advantage. It is our view that the decision of the trial judge was predicated upon an erroneous finding of fact and that we are in accord as to the applicable law of this jurisdiction. In his opinion the learned trial judge said: "Delivery of the purportedly executed deed is, in this case, a crucial question. Certainly there was not a delivery of the deed to the purported grantee between the time the notary testified that the deed was first executed and the time it was returned to the lawyer's office for the *final amendment*. The notary testified that it was at the suggestion of Mrs. Hamb that the deed was returned to the office for amendment. The evidence, therefore, clearly preponderates against any intent on the part of Mrs. Hamb to effect a delivery to the grantee at that time." (Italics supplied.)

This is a further statement from the opinion of Judge Taylor: "Counsel for the defendant argue that since a new certificate of acknowledgment would be precisely the same as the original, the act would be useless and should not be required. While it is true that a second certificate would have been a duplicate of the original, I cannot agree that such would have been a useless act; a second certificate would have, in this case, constituted record evidence of the series of events—specifically, the reacknowledgment of the deed—which led to the purported final execution and delivery of the deed. As the record presently stands, we must resort to the testimony of the notary to determine what transpired. I am, therefore, of opinion that the original certificate of the notary could not be adopted by her as a new certificate to the alleged reacknowledgment of the purported deed for the purpose of importing verity thereto. The execution and delivery, therefore, become questions of fact, stripped of the presumption of verity arising upon a regular certificate of acknowledgment. See Gaskins v. Allen (N. C. 1905), 49 S. E. 919."

It is clear from this record that the notary made three trips to the home of the grantor, Mrs. Hamb. It was on the first visit that Mrs. Hamb examined the deed, noted that her name was spelled "Hamm" rather than "Hamb" and declined to execute or acknowledge the deed until that mistake was rectified. The evidence is clear by the notary that at that time there was no signature affixed to the deed and that she did not take acknowledgment of any signature. On the second visit the notary, without creditable contradiction, stated that the deed was in the possession of the grantor, her name was affixed thereto and that after reading the deed to her, the grantor stated that the name affixed thereto was her signature and the notary formally appended her certificate. Mrs. Hamb never thereafter requested any change in the deed. However, at the office of the attorney for the grantee it was determined by him or some other person that the phrase "with all appurtenances thereunto belonging" should be contained in the granting clause and the first page was rewritten with that phrase included. Then came the third visit by the notary to the grantor.

Again the deed was read with the new phrase added and the deed was left with the grantor. We are of the view that with that correction in the facts relating to the transactions between the parties and the notary that the finding of the trial court would be identical to that of this Court.

The uncontradicted testimony of the attorney for the grantee was to the effect that soon after March 2nd the grantee brought the executed and acknowledged deed of the grantor to him for recordation. The lips of the grantee, of course, were sealed by virtue of Code, 57-3-1, as amended, the deceased persons' statute, but it must be assumed that the grantee received the deed from the grantor in whose possession the notary had left it, and brought it to the office of her attorney. The presumptions in the cases heretofore cited are conclusive as to that point. Furthermore, the testimony of the attorney for the grantee is uncontradicted to the effect that after the delivery of the deed to him by the grantee he caused it to be recorded in the office of the Clerk of the County Court of Kanawha County. Bouvier defines "delivery" as "the transfer of a deed from the grantor to the grantee, or some person acting in his behalf, in such a manner as to deprive the grantor of the right to recall it at his option." No particular form of delivery is required. A deed may be manually given by the grantor to the grantee, yet this is not necessary. The real test of delivery is, did the grantor, by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered. The delivery of a deed by the grantor to a deputy clerk for recordation, or, as heretofore stated, by the grantee's attorney at the former's request, constitutes a delivery to the grantee. An examination of the authorities and the decisions of other jurisdictions indicates that this is the universal rule.

For the reasons herein stated the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded to that court for such further proceedings as may be not in conflict with the mandate of this Court and the views expressed in this opinion.

*Reversed and remanded.*