700 S.E.2d 507

**Ella J. MONTGOMERY and Margaret C. Bowers, Plaintiffs Below, Appellees,**

v.

**William H. CALLISON, Jr. and Cecil Callison, Defendants Below, Appellants.**

**No. 35126.**

Supreme Court of Appeals of West Virginia.

Submitted April 21, 2010.

Decided June 7, 2010.

---

A. Andrew MacQueen, III, Timothy N. Barber, Charleston, WV, for Appellants.

Barry L. Bruce, Mark J. Jenkins, Lewisburg, WV, for Appellees.

PER CURIAM:

The instant action is before this Court upon the appeal of William H. Callison, Jr., and his brother, Cecil G. Callison ["Appellants"], from a February 12, 2008, order of the Circuit Court of Greenbrier County denying their Motion for a Judgment as a Matter of Law and for a New Trial which followed an August 27, 2007, jury verdict rendered in favor of plaintiffs below, Ella Montgomery and Margaret Bowers ["Appellees"] finding that certain deeds of real property were not properly delivered and were ineffective to convey the real estate described therein. In this appeal, Appellants contend that the circuit court committed error in denying their Motion for Judgment as a Matter of Law and for a New Trial because the evidence presented at trial demonstrates that the subject deeds were properly delivered to the Appellants by their father, William H. Callison, Sr. before his death. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the February 12, 2008, order of the Circuit Court of Greenbrier County is reversed and remanded with directions.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The parties to this action are the four children and sole heirs at law of William H. Callison, Sr. [hereinafter referred to as "Senior"] and Gladys M. Callison. Senior was a farmer and businessman in Renick, Greenbrier County, West Virginia. In addition to operating a mill, Senior accumulated substantial realty and valuable shares of stock. Three properties are the subject of this action:

1) Home Place—a 142 acre tract along U.S. Route 219 established as Senior and Gladys' residence. This was the place the four children were raised and the site of Senior's mill.

2) Robinson Place—a 254 acre farm tract that lies across U.S. 219 from the Home Place.

3) Taylor Place—a 264 acre farm tract located next to the Greenbrier River in a different section of Greenbrier County than the other parcels at issue in this case.

Prior to their deaths, Senior and Gladys retained C. Al McHale, a local attorney, to draft a deed dated January 15, 1968, conveying the Home Place to Appellant, William H. Callison, Jr. [hereinafter referred to as "Billy"]. That deed was executed and acknowledged on January 15, 1968. Additionally, prior to their deaths, Senior and Gladys retained C. Al McHale to draft a deed dated October 15, 1973, conveying the Robinson Place to Billy. Neither of these deeds was given to the possession of Billy at the time of their execution.

On August 15, 1977, Gladys died and Senior administered her estate with the assistance of the same lawyer, C. Al McHale ["Mr. McHale"].[1] The Home Place and the Robinson Place appear on the appraisal of her estate. The next month after Gladys' death, on September 23, 1987, Senior and Billy went to the Ronceverte National Bank where they jointly rented a safe deposit box, signed a rental agreement for it and were each issued a key to the box. Senior placed the deeds to the Home Place and the Robinson Place in the box, together with other papers. Based on the safe deposit box entry records at Ronceverte National Bank[2], Senior was the only individual who ever opened the safe deposit box from the time it was rented in 1977 until his death.

Seven years later, Senior engaged Mr. McHale to draft a deed conveying the Taylor Place to Appellant, Cecil G. Callison, which was signed and acknowledged on May 11, 1984. On that same day, Senior executed his will, which was also drafted by Mr. McHale.[3] Both documents were later recovered from the safe deposit box. Four months later, on September 7, 1984, Senior signed a codicil to his will wherein he deleted a provision giving Ella Montgomery $60,000.00 less the appraised value of the Ronceverte National Bank stock he had previously devised to her, and placed this stock in the remainder of his Estate. On that same date, Senior made a gift to Ella by paying $60,000.00 to an owner of a parcel of property for the sale of the same to Ella. This property became Ella's home and was the subject of a gift tax return filed by Senior.

On September 19, 1995, Senior and Billy went to the Ronceverte National Bank together and added Cecil's name to the safe deposit box. At some point prior to Senior's death, Senior gave his key to the safe deposit box to Cecil which he retained until the box was closed after Senior's death on February 17, 1997. Following Senior's death, on Feb-

---

1. It is not clear from the facts presented by the parties whether Gladys died intestate or with a will. Regardless, this fact is not central to our disposition of this case.

2. Attendant to the rental of the safe deposit box, the bank opened a form that disclosed each time a specific renter opened the box for any purpose. The form also notes changes in the rental agreement by the addition of other persons authorized by the original renters to enter the box.

3. Senior's last will and testament provided that:

SIXTH: I give, devise and bequeath all of the remainder of my property, real, personal or mixed, wherever situate, to my four (4) children, namely, CECIL G. CALLISON, WILLIAM H. CALLISON, JR., ELLA JANE MONTGOMERY and MARGARET ANN BOWERS in equal proportions, share and share alike.

ruary 25, 1997, the parties went to the Ronceverte National Bank together to open and inventory the contents of the safe deposit box. Two days later, on February 27, 1997, Billy and Cecil recorded the deeds to the respective parcels with the Greenbrier County Clerk's Office. The Last Will and Testament of Senior dated May 11, 1984, along with the codicil dated September 7, 1984, were presented for probate on March 18, 1997. Billy was named and performed as Executor of Senior's will with the counsel of Mr. McHale.

On February 10, 1998, a year following Senior's death, Appellees instituted the present action alleging that the above-described deeds should be set aside because they had never been properly delivered.[4] Discovery was had and the parties filed various motions *in limine* in preparation for trial.[5] The trial in this matter was conducted on August 21 and 22, 2007, wherein the jury returned a verdict in favor of the Appellees, finding that the subject deeds were not properly delivered and were ineffective to convey the real estate described therein. The Appellants then filed a Motion for Judgment as a Matter of Law and New Trial, which the circuit court denied by order entered February 12, 2008. It is from that order that Appellants now appeal.

## II.

### STANDARD OF REVIEW

Appellants are appealing the circuit court's denial of their Motion for Judgment as a Matter of Law and New Trial.[6] This Court has held that "[t]he appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter

of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo.*" Syl. Pt. 1, *Fredeking v. Tyler*, 224 W.Va. 1, 680 S.E.2d 16 (2009). In Syllabus Point 2 of *Fredeking v. Tyler*, 224 W.Va. 1, 680 S.E.2d 16, we explained that:

> When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* (1998), it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the non-moving party.

*See also* Syl. Pt. 2, *Alkire v. First National Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996).

"In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syl. Pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983). Mindful of these standards, we proceed forward to consider the arguments presented by the parties.

---

4. The case was originally assigned to Judge Rowe. However, Judge Rowe reassigned the case to Judge Joliffe because of his previous association with the then counsel for defendants below. Following Judge Joliffe's retirement, the case was re-assigned back to Judge Rowe, upon his assurance that the impediment that led to his original disqualification had been cured by the retention of new counsel by defendants below.

5. Although the Appellants recite a lengthy procedural history regarding various motions *in limine* filed by the parties for purposes of supporting the numerous assignments of error presented in this

appeal, it is not necessary for this Court to recount such facts, as we resolve this case on the sole issue of whether sufficient evidence was presented demonstrating that the deeds were delivered to the Appellants.

6. Because we base our opinion upon the conclusion that the lower court erred in failing to enter judgment as a matter of law, we proceed forward under the standard of review applicable to such denial rather than the denial of the motion for a new trial.

### III.

### DISCUSSION

Appellants assert seven assignments of error in this appeal.[7] However, because we find that the circuit court erred in failing to grant a directed verdict in favor of Appellants on the issue of whether the deeds were properly delivered and to set the jury verdict aside, we resolve this appeal on the first issue presented and thus find it unnecessary to address the remaining issues raised by the Appellants herein.

### A. Motion for Judgment as a Matter of Law and New Trial

■ Before turning to the merits of first issue presented, we pause briefly to address the initial procedural issue of whether the Appellants are precluded from challenging the circuit court's denial of their motion for directed verdict. Appellees assert that the Appellants are precluded from challenging the circuit court's denial of their motion for directed verdict because although Appellants moved twice for a directed verdict, once at the close of the plaintiffs' case in chief and once post judgment, they did not renew their motion for a directed verdict after they presented their case in chief. Appellees cite to a previous decision of this Court, *Chambers v. Smith*, 157 W.Va. 77, 198 S.E.2d 806 (1973), which held that:

"Although Rule 50(a) of the *West Virginia Rules of Civil Procedure* expressly provides that a party may introduce evidence upon the refusal of his motion for a directed verdict made at the close of his opponent's case, introduction of evidence at that point of the trial constitutes a waiver of the objection to the sufficiency of the evidence unless the motion for a directed verdict is renewed after all the evidence is in and the parties have rested."[8]

*Id.*, Syl. Pt. 1.

Appellants reply that they did in fact move for a directed verdict at the close of all the

---

7. Appellants allege the following errors by the circuit court:

(1) The circuit court erred by its failure to grant a directed verdict in favor of appellants (defendants below) and to set aside the jury verdict (and judgment upon which it was predicated) and thereby allowing a judgment in favor of defendants below reflecting that a delivery of the three deeds to Appellants respectively had been accomplished prior to the death of Senior.

(2) The trial court erred by prohibiting (under the auspices of the Dead Man's Statute) the testimony of Appellants as to the displayed and overt intent of Senior and Gladys in delivering the respective deeds.

(3) The trial court erred in denying the Appellants' motion to allow testimony it perceived to be barred by the Dead Man's Statute after appellees waived any such rights at trial.

(4) The trial court erred by refusing to allow the testimony of Gene Turner in behalf of Appellants.

(5) The trial court erred by refusing to allow the testimony of Vane Warner in behalf of the Appellants.

(6) The trial court erred by not granting Appellants' motion in limine to exclude testimony concerning the listing of the three properties in the estate documents of Gladys and Senior as well as the claim of a homestead exemption of the Home Place tract.

(7) The court erred in not giving an instruction to the jury allowing it to consider aspects of dominion and control of the respective deeds during Senior's lifetime.

8. Rule 50(a)(2) provides, in part, that "[m]otions for judgment as a matter of law may be made at any time before submission of the case to the jury." W. Va. R.Civ.P. 50(a) (1998). However, Rule 50(b) of the *West Virginia Rules of Civil Procedure* provides that: "If, for any reason, the court does not grant a motion for a judgment as a matter of law *made at the close of all the evidence*, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." W. Va. R.Civ.P. 50(b) (1998)(emphasis added). West Virginia's Rule 50, as currently drafted, differs from Rule 50 of the *Federal Rules of Civil Procedure*, which were amended in 2006. 9 Moore's Federal Practice, Sec. 50.20[3] (2010) provides that:

"Prior to 2006, Rule 50(b)stated that if the court did not "grant a motion for judgment as a matter of law made at the close of all the evidence," the court was considered to have submitted the action to the jury subject to the court's later decided legal questions raised by the motion. Most courts interpreted this language to require movants to make pre-verdict motions for judgment at the close of all evidence as a prerequisite to filing a renewed motion for judgment under Rule 50(b). As a result, a party who made a motion for judgment after an opponent's opening statement or at the close of the opponent's evidence, was required to reassert the motion at the close of all the evidence or risk waiving the right to appellate review.

The 2006 amendments to Rule 50(b) deleted the phrase "at the close of all the evidence" to

evidence in the case, but that the trial transcript omits this request from the record. Additionally, Appellants assert that the Appellees never advanced a claim of waiver at the hearing on the Appellants' Motion for Judgment as a Matter of Law and New Trial following the trial in this matter.

Indeed, the record reflects that in ruling on these motions, the trial court did in fact have opportunity to evaluate the sufficiency of the evidence and found that "there was sufficient evidence for the jury to have found for either party." Thus, because the circuit court had opportunity to evaluate and rule upon the issue of sufficiency of the evidence both prior to and following the jury verdict, we find that the Appellants are not precluded from asserting error on the trial court's part in denying their motions. Furthermore, we find that because the insufficiency of the evidence on the issue of delivery constitutes plain error apparent on the face of the record, as discussed more fully below, an exception to the long-standing rule in *Chambers v. Smith*, 157 W.Va. 77, 198 S.E.2d 806, is warranted in this case. In *Chambers*, this Court commented that:

> "It is well established that the sufficiency of the evidence is not reviewable on appeal unless a motion for a directed verdict was made in the trial court. There are sound reasons for this rule. The party who makes no motion for a directed verdict must be of the view that the evidence makes a case for the jury and should not be permitted to impute error to the court for sharing that view. The appellate court, therefore, is powerless to review the sufficiency of the evidence to support the verdict if the appellant made no motion for a directed verdict. *The only exception is where the insufficiency of the evidence constitutes plain error apparent on the face of the record which if not noticed*

*would result in a manifest miscarriage of justice.* Even if a motion for a new trial is made for insufficiency of the evidence, the failure to move for a directed verdict forecloses the question on appeal. A party may not gamble on the verdict and later question the sufficiency of the evidence."

*Id.* at 81, 198 S.E.2d at 809 (*quoting* 2 B Barron & Holtzoff, Sec. 1081)(emphasis added). That aside, we now turn to the merits of the issue of whether the circuit court erred in failing to grant a directed verdict in favor of Appellants and to set aside the jury verdict.

### B. Evidence of Delivery

Appellants assert that the circuit court erred in refusing to enter judgment as a matter of law in favor of the Appellants, or in the alternative, grant a new trial because the evidence was insufficient to support the jury's verdict that there was not effective delivery of the three deeds at issue in this appeal. Appellants contend that the facts, as recounted above, were undisputed at trial. They believe that the placing of the three deeds in the jointly leased safe deposit box constitutes actual or constructive delivery to the Appellants under West Virginia law. Specifically, Appellants assert that this Court's holding in *Walls v. Click*, 209 W.Va. 627, 550 S.E.2d 605 (2001) is applicable to the instant case.[9]

Conversely, the Appellees contend that the evidence presented at trial demonstrated that the three deeds were placed in a safe deposit box owned and exclusively controlled by Senior. In support of this assertion, Appellees point to the fact that Senior was the only individual who actually opened the safe deposit box, and Senior paid the rental fee for the safe deposit box throughout his lifetime. Appellees contend that neither Billy

---

clarify that it is not a requirement that the motion be made specifically at the close of all the evidence. The amendment was intended to reflect the fact that many courts permitted post-verdict motions for judgment despite the movant's failure to reassert a previously made Rule 50(a) motion at the literal "close of all the evidence." Nevertheless, many judges expressly invite motions at the close of all the evidence, and the amendment was not intend-

ed to 'discourage this useful practice.' Fed. R.Civ.P. 50(b), Committee Note of 2006."

We take this opportunity to observe that Rule 50(b) of the *West Virginia Rules of Civil Procedure* may need to be revised to comport with the amended provisions of its federal counterpart.

9. *Walls v. Click*, 209 W.Va. 627, 550 S.E.2d 605, is discussed in detail below.

nor Cecil took physical possession of the deeds before their father's death; rather, they only had opportunity to access the safe deposit box.

Furthermore, Appellees assert that Senior and Gladys continued to act throughout their lifetimes in a manner consistent with their continued ownership over the real estate at issue, as both lived on the Home Place until their deaths. Additionally, following Gladys' death, Mr. Callison listed all three of the tracts of property on the appraisement for her estate as property in which she held an interest at the time of her death, even though two of the deeds at issue had already been drafted years prior to her death. Senior also paid the real estate taxes on all three tracts of property and paid certain expenses for the upkeep of the Home Place and Robinson property. Additionally, Senior collected rent for the Taylor Property up until his death in 1997.

Moreover, Appellees assert that Senior's Last Will and Testament, dated May 11, 1984, specifically stated in Paragraph 6 that he wanted all of his children to have a 1/4 undivided interest in his "property, real, personal or mixed." Appellees state that Senior must have believed he owned all three tracts of land at the time his will and codicil were drafted because these three tracts of land were the only real property that Senior owned. Lastly, Appellees assert that *Walls v. Click*, 209 W.Va. 627, 550 S.E.2d 605, is distinguishable from the facts of the instant case.

In their reply, Appellants assert that the evidence of joint leasing of the safe deposit box on September 23, 1977, was not controverted at trial. Rather, the Appellees repeatedly misstate the record, as the trial testimony and exhibits demonstrate that the safe deposit box was not exclusively owned and controlled by Senior. Specifically, Appellants recite the terms of the safe deposit box agreement, which reflect that both Senior and Billy opened the box together on September 23, 1977. Appellants also point to the only testimony adduced at trial on the subject of ownership, wherein Billy testified to the following regarding the September 23, 1977 rental agreement:

Q. Your dad and you both signed that?

A. Yes

Q. At that time when you rented—you and your dad rented that box, did the bank issue you some key?

A. Yes, sir, keys, two keys.

On the second day of trial, Billy also testified:

Q. Okay. In 1977 when you went down there, there were not three deeds but two deeds from you and the 1968 and the 1973 deed to the Robinson home place, your dad and you opened that box up?

A. Yes.

Q. You're in a position to know that, Sir?

A. Yes.

Furthermore, Appellants assert that, in his argument to the jury, Appellees' own counsel refers to Senior as being "one of the lessors" of the box. He stated that "we would readily admit that from the very beginning that Billy Callison's name was also on the deposit box." Likewise, Appellants assert that the testimony is undisputed that Senior and Billy added Cecil's name to the safe deposit box agreement, and Cecil testified that his father delivered his only key to him. Senior is never shown to have visited the box after that date, September 19, 1995.

■ Upon extensive review of the briefs and arguments of the parties, pertinent authorities and the record herein, we find that the circuit court committed error in denying Appellants' motion for judgment as a matter of law, as the evidence presented at trial clearly establishes a valid delivery of the deeds in question.

In *Walls v. Click*, 209 W.Va. 627, 550 S.E.2d 605, this Court overturned a jury verdict where the grantor's intention to deliver the deeds was manifest. In that case, Ms. Walls, a business partner of Mr. Click, held title to certain parcels of property in joint tenancy with a right of survivorship with him. Ms. Walls filed a complaint challenging the validity of a deed executed by Mr. Click that transferred his ownership interest of three of five parcels of jointly owned real

estate to his wife and child. The testimony at trial revealed that a safe deposit box was opened by Mr. Click's son, at the direction of Mr. Click, and the deed was placed in it. The box was accessible only by the wife and son. Although Mr. Click did not have access to the box, he retained dominion over the property, including using it as collateral for a loan and claiming a homestead exemption. The son testified that his father told him and his mother that "he would take care of the properties, for [them]" until his death. *Id.* at 632, 550 S.E.2d at 610.

In determining whether delivery had been established, this Court considered the legal requirements for effective delivery of a deed. Therein, we observed that:

Established precedent dictates that a deed takes effect from its actual or constructive delivery. *Jones v. Wolfe*, 203 W.Va. 613, 509 S.E.2d 894 (1998); *Parish [Parrish] v. Pancake*, 158 W.Va. 842, 215 S.E.2d 659 (1975). In *Jones*, this court explained that '[r]ecording of the deed is not critical and acknowledgment is not essential to its validity.' 203 W.Va. at 615, 509 S.E.2d at 896. In syllabus point three of *Bennett v. Neff*, 130 W.Va. 121, 42 S.E.2d 793 (1947), this Court explained that '[d]elivery of a deed by the grantor with intent that it take effect as his deed and its acceptance, either express or implied by the grantee are essential to its validity.' In *Garrett v. Goff*, 61 W.Va. 221, 56 S.E. 351 (1907), this Court reiterated its earlier holding that '[t]o constitute a delivery of a deed, the grantor must by act or word, or both, part with all right of possession and dominion over the instrument with the intent that it shall take effect as his deed.' *Id.* at 230, 56 S.E. at 355 *quoting Gaines v. Keener*, 48 W.Va. 56, 35 S.E. 856 (1900).

Thus, effective delivery of a deed must include (1) transfer of possession of a valid deed satisfying all required formalities, and (2) intent of the grantor to divest himself of title.

As this Court recognized in *Evans v. Bottomlee*, 150 W.Va. 609, 148 S.E.2d 712 (1966), '[n]o particular form of delivery is required.' *Id.* at 623, 148 S.E.2d at 721. 'A deed may be manually given by the grantor to the grantee, yet this is not necessary. The real test of delivery is, did the grantor, by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered.' *Id.*

. . .

In *Heck v. Morgan*, 88 W.Va. 102, 106 S.E. 413 (1921), this Court examined the issue of a conveyance of realty and explained the issue of a conveyance of realty and explained that "[p]ossession of an instrument of this character by the grantee is prima facie evidence that it was delivered to him with the intention that it should convey the grantor's title...." *Id.* at 112–13, 106 S.E. at 417. This presumption based on possession was reiterated in syllabus point two of *Evans*, as follows: "Possession of a deed executed and acknowledged with all formalities is prima facie evidence of delivery." 150 W.Va. at 609, 148 S.E.2d at 713.

*Id.* at 611–12, 633–34, 550 S.E.2d 605.

Applying these legal principles to the facts presented in *Click*, this Court found that the placing of the deed by the grantee in the safe deposit box constituted possession, and thus concluded that Lewis Click intended to divest himself of his one-half interest in the three properties at issue and transfer his interest to his wife and son. *Id.* at 617, 639, 550 S.E.2d 605. Thus, this Court held that the circuit court erred in failing to grant the Appellants' motion for judgment as a matter of law because in viewing the evidence in the light most favorable to the Appellee, such evidence was inadequate to overcome the prima facie showing of effective delivery and was legally insufficient to support the jury verdict. *Id.*

Specifically, this Court found that the condition that Mr. Click attached to the delivery of the deed, directing that the same not be recorded until after his death, was without legal significance and did not render the delivery ineffective. *Id.* at 613, 635, 550 S.E.2d 605.[10] This Court also found that

---

**10.** *Id.* at 613, 635, 550 S.E.2d 605 (*citing Dorr v. Middleburg*, 65 W.Va. 778, 65 S.E. 97 (1909), which held that where a deed executed and delivered by the grantor to the grantee is to take effect

having established the prima facie evidence of delivery and the irrelevance of the condition that the deed not be recorded until his death, the burden was upon those contesting the conveyance to prove facts overcoming the presumption on an effective deed. However, it was determined that Mr. Click's continued management and involvement with the properties subsequent to delivering the deed did not evidence a lack of present intent to transfer the properties at the time of delivery.[11] This Court found that Mr. Click's intent to divest himself of the property at issue was manifest, and thus, delivery was completed. *Id.*

In turning to the facts of the case *sub judice*, it is undisputed that Senior engaged the services of Attorney McHale to draft each of the three deeds at issue, all of which were properly signed and acknowledged. All three of these deeds were placed in the safe deposit box before Senior's death. It is also undisputed that only two keys were issued to the safe deposit box by the Bank of Ronceverte when the box was opened on September 23, 1977, shortly after Gladys' death.[12] One key was given to Billy, who kept it until the box was closed after Senior's death. The other key was kept by Senior until he gave it to Cecil, subsequent to adding Cecil's name to the safe deposit box title on September 19, 1995.[13] No other keys were ever issued allowing access to the safe deposit box.

Although the safe deposit box records reflect that Senior was the only individual that

actually physically accessed the box during his lifetime, Senior did not maintain exclusive control of the safe deposit box. Indeed, notations made on agreement in September 1995 indicated "joint." More importantly, the rental agreement on the safe deposit box signed by both Senior and Billy contained the following language:

"A rental contract, signed by two or more lessees, constitutes a separate rental to each, and either of them shall have access, free from liability on the part of the lessor for misappropriating any of the contents thereof. Either may appoint a deputy to have access to or surrender the box. In all cases of joint lessees it is hereby declared that *each of them has such interest in the entire contents of said box as to entitle him or her to possession thereof,* without liability to the lessor for misappropriating same, and lessor is not bound to take notice of the content of said box or insolvency of either of lessees."

(Emphasis added).

While Senior initially retained a key to the box after placing the deeds therein, the testimony is undisputed that prior to his death, Senior gave Cecil his only key to the box, thereby demonstrating his intent to relinquish any control and right to possession of the contents of the box. Cecil kept this key until after his father's death, when he gave the key to Billy to turn in to the bank. The bank records are consistent with Cecil's testimony, showing that Senior did not access the

---

upon any condition, the condition is void and the deed becomes absolute, and the title passes immediately on the delivery thereof, and the condition cannot be shown by parol evidence so as to defeat the deed.)

11. Similar to the facts in the present case, the Appellants in *Click* presented evidence that Mr. Click continued to manage the properties in question after the 1993 deed, collecting rent on the properties, paying bills for the properties, and obtaining a loan on the basis of ownership of the properties. Mr. Click also received a homestead exemption for his interest in the property upon which he resided and continued to declare the income and expenses generated from the properties on his personal income tax returns.

12. The rental agreement for the safe deposit box in fact indicates that only two keys were given at the time the box was opened. We agree with the Appellants' that there is no evidence in this case

that Senior opened the safe deposit box prior to making Billy a joint lessee.

13. Appellees attempted to create an alleged dispute of fact at oral argument regarding the issue of whether Cecil had a key by pointing to the cross-examination of Billy at trial. Our review of the record indicates that although Billy was indeed cross-examined on the issue of whether he was personally aware that Cecil had a key, and a small conflict in his testimony may have existed, we believe it is not so material to permit more than one finding from the evidence on the whole adduced at trial. Indeed, Cecil, the only individual who would have had first-hand knowledge of this issue, testified at trial that his father gave him a key to the safe deposit box "in 1995." The Appellees did not conduct any further cross-examination of Cecil on this issue.

box at any point after 1995. In fact, the last time Senior actually accessed the contents of the box was September 15, 1987.

Thus, although the deeds at issue in the instant case were originally placed in a safe deposit box that was jointly leased by the grantor and grantee, instead of being placed in the grantee's own safe deposit box, as done in *Walls v. Click*, the facts here demonstrate that the overall effect is nevertheless the same. Through the act of giving his key to Cecil, Senior denied himself access to the safe deposit box, and Billy and Cecil thereby obtained the exclusive ability to access the safe deposit box for a year and five months prior to Senior's death. We find this demonstrates Senior's intent to "part with all right of possession and dominion over" the deeds in question and "divest himself of title" as required by West Virginia law. *See Garrett v. Goff*, 61 W.Va. at 230, 56 S.E. at 355('[t]o constitute a delivery of a deed, the grantor must by act or word, or both, part with all right of possession and dominion over the instrument with the intent that it shall take effect as his deed.'); *Evans v. Bottomlee*, 150 W.Va. 609, 148 S.E.2d 712. Possession of the deeds at issue was therefore prima facie evidence of delivery.

■ Furthermore, we are not convinced by Appellees' assertion that the actions of Senior during his lifetime, including listing the properties on the appraisement of Gladys' estate, paying taxes and collecting rent on the properties, disproved his intent to convey the properties. Because we find that Senior clearly did not maintain possession of the deeds at issue herein, any such subsequent actions by Senior, at most, only constitute evidence that Senior wanted to continue to manage these properties until his death, after which time he intended for the deeds to be recorded. As we stated in *Walls v. Click*, such "conditions" of delivery do not invalidate the immediate and effective delivery of the deeds in 1995. *Id.* at 615, 637, 550 S.E.2d 605.[14]

■ This Court has acknowledged that the issue of "[w]hether a particular set of facts constitutes an effective delivery" has been held to be a "question of law" even though "the question of whether there has, in fact, been a delivery is a question which must be decided by the trier of fact." *Walls v. Click*, 209 W.Va. at 638, 550 S.E.2d at 616. Thus, the resolution of this case requires this Court to apply legal principles to established and undisputed facts.

Upon thorough review of the briefs, arguments of counsel, the record and applicable precedent, we conclude that the lower court erred in failing to grant the Appellants' motion for judgment as a matter of law. Viewing the evidence in a light most favorable to the Appellees, as our standard of review requires, we find no evidence sufficient to overcome the prima facie showing of effective delivery and that the evidence was legally

---

**14.** This Court has indeed acknowledged that subsequent events may in some circumstances illuminate issues of prior intent. However, in *Walls v. Click*, this Court stated the following:

> In the syllabus of *French v. Dillon*, 120 W.Va. 268, 197 S.E. 725 (1938), this Court explained as follows:
>
>> To constitute legal delivery of a deed, the grantor must intend that it presently vest in the grantee the estate purportedly conveyed. The handing of the deed to the grantee without that intent is not delivery. The purpose of the manual delivery may be shown by circumstances. Among the circumstances admissible are the subsequent control of the property described in the deed, and the subsequent conduct of the parties.
>
> Of extreme distinguishing import, however, is the fact that the grantor in French maintained possession of the actual deed instrument. The deed was found with other papers of the grantor after his death.

*Id.* at 615, 637, 197 S.E. 725. Based upon the fact that Ms. Walls presented no evidence that Mr. Click's wife and son had distorted the truth in any manner or did not have possession of the deed from 1993 until Mr. Click's death, and that such actions were not inconsistent with idea that Mr. Click wanted to continue to manage the properties for his wife and son while he was living, this Court found that such actions and conditions upon delivery were extraneous to the primary issue posed: Did Mr. Click intend to convey his interest in the properties? *Id.*

Furthermore, in reviewing the record in the case *sub judice*, we observe that some of these conditional actions allegedly taken by Senior during his lifetime have little significance to the issue of intent because they occurred prior to 1995, the point at which Senior accomplished delivery by giving his key to the safe deposit box to Cecil. For example, Senior listed these properties on the appraisement of Gladys' estate following her death in 1977.

insufficient to support the jury verdict. The evidence presented at the trial in this matter clearly and unequivocally establishes that Senior intended to divest himself of the three tracts of property at issue and transfer his interest in the same as set forth in the provisions of the respective deeds.

## IV.

### CONCLUSION

Accordingly, for the foregoing reasons, the February 12, 2008, order of the Circuit Court of Greenbrier County denying Appellants' Motion for Judgment as a Matter of Law and for a New Trial is hereby reversed and remanded with directions to order judgment for the Appellants.

**Reversed and remanded with directions.**